BOSWAY TUBE & STEEL CORPORATION v McKAY MACHINE
COMPANY

1. CONTRACTS—BREACH OF CONTRACT—DAMAGES—TUBING MACHINE.

A trial court properly found a breach of contract and awarded
monetary damages to the buyer of a machine for the manufac-
ture of metal tubing and granted a setoff in favor of the seller
for that portion of the purchase price yet unpaid where the
machine was designed to manufacture both round and square
tubing, but never satisfactorily produced square tubing, which
was the buyer's primary purpose in purchasing the machine,
and the seller ceased to make repairs, although the machine
still would not produce square tubing.

2. CONTRACTS—UNIFORM COMMERCIAL CODE—WARRANTIES—STATUTES.

The provision of the Uniform Commercial Code that acceptance
creates a contract even though it states terms different than
those contained in the offer applied and a contract was estab-
lished by the conduct of the parties where the offer to sell a
machine stated that the seller was without liability for any
damages or loss caused by defective material or workmanship
beyond repairing or replacing it, and that no other warranty,
except a title, shall be implied while the offer to buy the
machine stated that it was guaranteed to perform to the
buyer's satisfaction; since the writings conflicted as to warran-
ties, neither provision became a part of the contract, and the
Uniform Commercial Code implied warranty of merchantability
was in effect (MCLA 440.2207[1]; 440.2314).

3. SALES—UNIFORM COMMERCIAL CODE—DAMAGES—NONCONFORMING
    GOODS—STATUTES.

The remedy of the Uniform Commercial Code which allows the
buyer damages for nonconforming goods applied where there

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Contracts §§ 441–447.
[2] 15 Am Jur 2d, Commercial Code § 8.
[3] 67 Am Jur 2d, Sales § 671.
[4] 67 Am Jur 2d, Sales §§ 463, 468.
[5] 67 Am Jur 2d, Sales § 724.

were several defects in a tube manufacturing machine which were not corrected by the seller and to apply the seller's limitation of damages clause would be unconscionable (MCLA 440.2714).

4. SALES—WARRANTIES—IMPLIED WARRANTY OF MERCHANTABILITY—
   UNIFORM COMMERCIAL CODE—IMPLIED WARRANTY OF FITNESS—
   STATUTES.

   Under the implied warranty of merchantability in the Uniform Commercial Code, the seller warrants the goods are fit for the ordinary purposes for which such goods are used, whereas under the implied warranty of fitness for a particular purpose, the seller warrants that the goods are fit for a particular purpose for which the buyer wants such goods; hence, the warranty of merchantability is that the goods are of average quality within the industry, while the warranty of fitness is that the goods are fit for the purposes for which they were intended (MCLA 440.2314[2][c], 440.2315).

5. SALES—FINDINGS OF FACT—BREACH OF IMPLIED WARRANTY.

   A finding of fact necessary to constitute a breach of the implied warranty of merchantability of a machine designed to manufacture both round and square tubing was made where the judge stated on the record that a tube mill was not fit for the ordinary purpose of producing quality salable square tubing.

Appeal from Wayne, Dale Riker, J. Submitted October 8, 1975, at Detroit. (Docket No. 19701.) Decided November 12, 1975. Leave to appeal applied for.

Complaint by Bosway Tube & Steel Corporation against McKay Machine Company for breach of contract. Judgment for plaintiff with a setoff for defendant. Defendant appeals. Affirmed.

*Hill, Lewis, Adams, Goodrich & Tait* (by *Timothy D. Wittlinger* and *John D. Mabley),* for plaintiff.

*Cross, Wrock, Miller & Vieson* (by *W. Robert Chandler),* for defendant.

Before: J. H. Gillis, P. J., and Bronson and T. M. Burns, JJ.

T. M. Burns, J. Plaintiff purchased a tube mill (a machine which manufactures metal tubing) from defendant in 1965. After delivery and installation, the mill did not perform properly and much time and money were expended by both parties in attempts to repair it. The mill was designed and constructed to manufacture both round and square tubing, but in operation never satisfactorily produced square tubing. It is apparent from the record that plaintiff's primary purpose in purchasing the tube mill was for the production of square tubing. A year after delivery of the machine, defendant ceased making repairs on the tube mill, despite the fact that the mill would still not produce square tubing. Plaintiff subsequently sold the machine and brought the suit below alleging breach of contract by defendant. The trial court awarded plaintiff $107,944 in damages with a setoff to defendant for that portion of the purchase price yet unpaid. While defendant makes several assignments of error which warrant discussion, we find none which require reversal.

Defendant first asserts that the trial court erred in granting plaintiff damages since the offer to sell the machine limited defendant's liability to repair or replacement of defects in the machine. This argument is without merit. The agreement between the parties for the sale and purchase of the tube mill was not reduced to final written form. The only evidence of a contract in this cause is a detailed offer to sell emanating from defendant, a bare acceptance by plaintiff which conflicts with the offer, and the conduct of the parties in carrying out the contract. In such situations, § 2-207 of the Uniform Commercial Code (UCC) provides that

the acceptance creates a contract even though it states terms different from those contained in the offer.[1] Under UCC § 2-207(3), the contract is established by the conduct of the parties and the contract terms are those upon which the writings agree and terms supplied by the code.[2] Most important to this litigation is that the writings disagreed as to warranties. Defendant's offer contained the following paragraph:

"We warrant all apparatus manufactured by us to be free from defective material and workmanship appearing within 12 months from the date of delivery if given normal and proper usage provided the equipment is still owned by the original purchaser. *We are without liability for any damage or loss caused by defective material or workmanship beyond repairing or replacing it.* Auxiliary items manufactured by others are sold only under such warranty as the maker provides. *No other warranty, except a title, shall be implied.* We assume no liability for repairs made by others without our written consent. Claims for shortages or breakage will not be recognized unless made in writing within 10 days of shipment." (Emphasis added.)

Plaintiff's acceptance was as follows:

"Kindly consider this letter to be our Formal Purchase Order No. 1000. Contents to certify the purchase from the McKay Machine Company of one (1) McKay W.R.S. 740 Tube Mill complete as per your quotation No. 4440-MB, dated April 27, 1965, and *guaranteed by McKay Machine Company to perform to our satisfaction.*"(Emphasis added.)

Since the writings conflicted as to warranties, neither provision became a part of the contract, and the UCC implied warranty of merchantability

---

[1] MCLA 440.2207(1); MSA 19.2207(1).

[2] MCLA 440.2207(3); MSA 19.2207(3).

(§ 2-314) was in effect.[3] The trial court found that this implied warranty was breached. The correctness of this finding we will discuss *infra.*

As to the limitation of damages clause in defendant's offer, we need not decide whether that was part of the contract or not. Section 2-719(2) of the UCC provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act".[4] The court below found that several defects were never corrected by defendant. There is no question that the machine on delivery was grossly defective. Not only does the limitation of remedies provision fail of its essential purpose, but its application in this case would be unconscionable. Without that limiting clause, the code remedies apply, including those set out in UCC § 2-714 which allows the buyer damages for nonconforming goods.[5]

Defendant next claims that the damage award, being greater than the purchase price of the machine, was based on insufficient evidence. Defendant argues that when the resale price of the machine is coupled with the award of damages, the plaintiff will receive more than the purchase price of the machine. Defendant fails to note that improvements were made to the machine by both parties after delivery. These improvements could only have enhanced the original value of the tube mill. It is not disputed that these improvements were made and included in the resale price. Considering the sale price and the improvements made after sale, we cannot say that the trial court's valuation of the machine was unreasonable

[3] MCLA 440.2314; MSA 19.2314.

[4] MCLA 440.2719(2); MSA 19.2719(2).

[5] MCLA 440.2714; MSA 19.2714.

let alone clearly erroneous. Therefore, the trial court's finding must stand. *Home Insurance Co v Commercial & Industrial Security Services, Inc,* 57 Mich App 143; 225 NW2d 716 (1974).

Defendant also challenges the trial court's finding that defendant breached an implied warranty under the UCC. There is indeed some confusion in the court's discussion of the applicability of code warranties to the facts of this case. It is necessary in any case of this nature to clearly distinguish between the two implied warranties set out in the UCC article on sale of goods as the proofs required to find a breach of either are significantly different. Under the implied warranty of merchantability, the seller warrants that the goods are "fit for the ordinary purposes for which such goods are used".[6] Under the implied warranty of fitness for a particular purpose, the seller warrants that the goods are fit for a particular purpose for which the buyer wants such goods.[7] Hence, the warranty of merchantability is that the goods are of average quality within the industry, while the warranty of fitness is that the goods are fit for the purposes for which they were intended. *Ambassador Steel Co v Ewald Steel Co,* 33 Mich App 495; 190 NW2d 275 (1971). Despite the apparent confusion of the trial court regarding this distinction, the judge did make the finding of fact necessary to constitute a breach of the implied warranty of merchantability. As the judge stated:

> "The Court has no difficulty in finding that the tube mill was not fit for the *ordinary purpose* of producing quality salable square tubing." (Emphasis added.)

From our independent review of the facts, we

---

[6] MCLA 440.2314(2)(c); MSA 19.2314(2)(c).

[7] MCLA 440.2315; MSA 19.2315.

cannot say that the trial court's finding was erroneous.

Finding no error, we affirm the decision of the trial court.