LATIMER v WILLIAM MUELLER & SON, INC

HECKROTH v WILLIAM MUELLER & SON, INC

Docket Nos. 79175, 79176. Submitted August 7, 1985, at Lansing.—Decided March 4, 1986.

Alan D. Latimer and Jack Heckroth brought separate actions in Tuscola Circuit Court against William Mueller & Son, Inc., alleging that Mueller had sold to them bean seed tainted by a bacterial blight, that the sale of such bean seed constituted a breach of certain express and implied warranties and that as a result of the tainted seed each plaintiff had suffered damages due to reduced crop yields. Mueller brought a third-party indemnity action against Conida Warehouses, Inc., the Idaho supplier of the seed in question. Conida, in turn, brought an indemnity action against C & B. Cattle Company, the Idaho grower of the seed, and answered the Mueller indemnity action with the affirmative defense that the warranty tag on the bags of seeds disclaimed liability for any implied warranties and limited its liability, if any, to the price of the seed. C & B moved for accelerated judgment in each of the cases based on the theory of collateral estoppel based on the granting of a directed verdict in the Gratiot Circuit Court on an identical indemnity claim by Conida in another action based on tainted seed from the same lot. The Latimer and Heckroth cases were consolidated. The trial court, Patrick R. Joslyn, J., granted

REFERENCES

Am Jur 2d, Indemnity §§ 19 et seq.

Am Jur 2d, Judgments §§ 379 et seq

Am Jur 2d, Sales §§ 690-852.

Am Jur 2d, Trial §§ 463-558.

What constitutes a transaction, a contract for sale, or a sale within scope of UCC Article 2. 4 ALR4th 85.

Power of court sitting as trier of fact to dismiss at close of plaintiff's evidence, notwithstanding plaintiff has made out prima facie case. 55 ALR3d 272.

Right of manufacturer or seller to contribution or indemnity from user of product causing injury or damage to third person, and vice versa. 28 ALR3d 943.

Dismissal, nonsuit, judgment, or direction of verdict on opening statement of counsel in civil action. 5 ALR3d 1405.

summary judgment in favor of C & B as to Conida's counts claiming breach of implied and express warranties, but denied summary judgment as to Conida's claim based on negligence. The trial court denied Mueller's motion for a directed verdict on plaintiffs' claims for breach of express warranty and Conida's motion for a directed verdict on Mueller's indemnity action on the basis of the disclaimer tags attached to the seed bags. The trial court also found the evidence sufficient to submit to the jury the question of whether Mueller had breached an implied warranty to plaintiffs and reaffirmed a prior determination that collateral estoppel did not preclude Conida from asserting its negligence action against C & B, but that under Idaho law Conida's negligence claim against C & B would be barred because of Conida's own negligence. By special verdict, the jury found that Mueller had breached express and implied warranties of merchantability. The jury awarded $31,457.52 in damages to Heckroth and $28,943 in damages to Latimer. The jury further found in each case that 25 percent of the damages were attributable to Mueller's breach of an express warranty, 25 percent to Mueller's breach of implied warranty, and 50 percent attributable to Conida's breach of implied warranty. On the indemnity claim by Conida against C & B, the jury determined that of the 50 percent of plaintiffs' damages attributable to Conida 50 percent of that amount was caused by Conida's breach of implied warranty, 25 percent was caused by Conida's negligence, and 25 percent by C & B's negligence. Conida appealed. Mueller and C & B each cross-appealed. *Held:*

1. It was error for the trial court to deny Mueller's motion for a directed verdict on Latimer's express warranty claim in that there was no evidence that Mueller expressly warranted that the seed was disease free.

2. The trial court properly denied Conida's motion for a directed verdict on the implied warranty of merchantability claim, since the evidence established that Idaho seed had the reputation in the trade of being basically disease free and an implied warranty of merchantability under the Uniform Commercial Code can arise out of course of dealing or usage in the trade. Since there was evidence from which a jury could find an implied warranty of merchantability based on usage in the trade, and since there was evidence from which the jury could have found a breach of that implied warranty, the trial court properly denied Conida's motion for a directed verdict on plaintiff's breach of implied warranty of merchantability claim.

3. The warranty tags containing the language disclaiming any liability under any implied warranty of merchantability

did not act as effective disclaimers in that the disclaimer cannot be said to be conspicuous as required by the Uniform Commercial Code.

4. Limiting recovery to the purchase price of the seed would lead to an unconscionable result.

5. Since Mueller's liability to the plaintiffs arose out of the breach of implied warranties of merchantability and such breach arose solely by operation of law without proof of any fault on Mueller's part, Mueller is entitled to common law indemnity from Conida.

6. The trial court should have dismissed C & B from the case, since Conida was collaterally estopped from relitigating the question of whether C & B had been negligent in supplying the tainted seed to Conida inasmuch as that question had been decided on the merits in the Gratiot County case. A judgment entered pursuant to the grant of a motion for a directed verdict made following the opening statement is a decision on the merits such as will trigger the applicability of the doctrine of collateral estoppel.

Affirmed in part, reversed in part.

1. TRIAL — DIRECTED VERDICT.

A motion for directed verdict may only be granted when no factual question exists upon which reasonable minds can differ; the Court of Appeals, in reviewing a trial court's denial of a motion for a directed verdict, views the evidence in the light most favorable to the nonmoving party to determine whether a prima facie case has been established.

2. SALES — UNIFORM COMMERCIAL CODE — WARRANTY OF MERCHANT-ABILITY.

The sale of agricultural seed is subject to the provisions of the Uniform Commercial Code; implicit in the sale of such seed is a warranty that the seed will be of merchantable quality (MCL 440.2314; MSA 19.2314).

3. SALES — UNIFORM COMMERCIAL CODE — WARRANTY OF MERCHANT-ABILITY.

A seller, pursuant to the implied warranty of merchantability under the sales article of the Uniform Commercial Code, warrants that the goods are fit for the ordinary purposes for which the goods are used (MCL 440.2314[2]; MSA 19.2314[2]).

4. SALES — UNIFORM COMMERCIAL CODE — WARRANTY OF MERCHANT-ABILITY.

Implied warranties of merchantability under the Uniform Com-

mercial Code, unless excluded or modified pursuant to the code, may arise from course of dealing or usage of trade (MCL 440.2314[3]; MSA 19.2314[3]).

5. SALES — UNIFORM COMMERCIAL CODE — WARRANTY OF MERCHANTABILITY.

Agricultural seed which within the agricultural seed trade has the general reputation of being free of disease will, in the absence of exclusion or modification, be deemed to have been sold subject to an implied warranty of merchantability pursuant to the sales article of the Uniform Commercial Code that it has, at most, very low levels of seed-borne bacterial diseases (MCL 440.2314[2]; MSA 19.2314[2]).

6. SALES — UNIFORM COMMERCIAL CODE — WARRANTY OF MERCHANTABILITY — DISCLAIMERS.

An implied warranty of merchantability arising under the sales article of the Uniform Commercial Code may be excluded or modified; however, such a disclaimer, to be effective, must mention merchantability and, in the case of a writing, must be conspicuous (MCL 440.2316[2]; MSA 19.2316[2]).

7. WORDS AND PHRASES — CONSPICUOUS — UNIFORM COMMERCIAL CODE.

A term or clause is conspicuous within the meaning of the Uniform Commercial Code when it is so written that a reasonable person against whom it is to operate ought to have noticed it (MCL 440.1201[10]; MSA 19.1201[10]).

8. SALES — UNIFORM COMMERCIAL CODE — WARRANTY OF MERCHANTABILITY — DISCLAIMERS.

An implied warranty of merchantability arising pursuant to the sales article of the Uniform Commercial Code is not effectively disclaimed where the disclaimer language appears on a tag attached to the sack of agricultural seed that is being sold and where the only emphasized language on that tag is the word "warranty", since under those circumstances the disclaimer language cannot be said to be conspicuous (MCL 440.2316[2]; MSA 19.2316[2]).

9. SALES — UNIFORM COMMERCIAL CODE — DAMAGES — LIMITATION OF REMEDIES — UNCONSCIONABLE RESULTS.

Consequential damages for breaches of provisions of sales agreements subject to the Uniform Commercial Code may be limited or excluded by agreement of the parties unless an unconscionable result would be worked; the question of the unconscionability of the result should be determined as of the time the sales

contract was made (MCL 440.2302, 440.2719[3]; MSA 19.2302, 19.2719[3]).

10. INDEMNITY — COMMON LAW — RESTITUTION.

Common law indemnity is based on the equitable principal that where the wrongful act of one results in another being held liable, the latter party is entitled to restitution from the wrongdoer.

11. INDEMNITY — COMMON LAW — VICARIOUS LIABILITY.

Common law indemnity can be enforced only where liability arises vicariously or by operation of law from the acts of the party from whom indemnity is sought; in other words, common law indemnity is only available to a party who can plead and prove freedom from active fault.

12. SALES — UNIFORM COMMERCIAL CODE — WARRANTY OF MERCHANTABILITY — INDEMNITY — COMMON LAW.

Liability based on a claim of a breach of an implied warranty of merchantability which came into being pursuant to the provisions of the sales article of the Uniform Commercial Code arises without proof of fault and solely by operation of law except where the claimed breach of implied warranty is based upon a claim of defective design; accordingly, one may seek common law indemnity from a supplier of goods where one's liability is based upon the breach of an implied warranty of merchantability, other than for defective design, arising out of the sale of the goods to the plaintiff in the principal action.

13. ESTOPPEL — JUDGMENTS — COLLATERAL ESTOPPEL.

Collateral estoppel bars the relitigation of issues previously decided in a first action when the parties to a second action are the same; where the second action is a different cause of action, the bar is conclusive regarding issues actually litigated in the first action.

14. ESTOPPEL — JUDGMENTS — COLLATERAL ESTOPPEL.

Collateral estoppel applies only where the same ultimate issues underlying the present action were involved in a previous action between the parties and the parties had a full opportunity to litigate the ultimate issues in the former action.

15. ESTOPPEL — JUDGMENTS — COLLATERAL ESTOPPEL.

Collateral estoppel applies only where there is mutuality of estoppel; mutuality of estoppel is present if both litigants in the second suit are bound by the judgment rendered in the first suit.

16. ESTOPPEL — JUDGMENTS — COLLATERAL ESTOPPEL — JUDGMENTS
    ON THE MERITS — DIRECTED VERDICT.

Judgment entered pursuant to a motion for a directed verdict
made after the opening statement is a judgment on the merits
as to the issues raised in the pleadings and opening statement;
since a judgment under those circumstances is a judgment on
the merits of all issues raised by the pleadings and opening
statement, both parties would be collaterally estopped from
relitigating those issues in any subsequent action between the
parties.

*Cubitt, Cubitt & Trowhill* (by *Dale Cubitt*), for
plaintiffs.

*Smith & Brooker, P.C.* (by *Mona C. Doyle, Richard G. Smith,* and *James W. Tarter*), for Conida
Warehouses, Inc.

*Lambert, Leser, Herbert, Dahm, Giunta & Cook,
P.C.* (by *Peter F. Dahm*), for William Mueller &
Son, Inc.

*Seavitt, Westcott & Stowe* (by *Michael J.
Yockey*), for C & B Cattle Company.

Before: HOOD, P.J., and D. E. HOLBROOK, JR., and
D. P. KERWIN,* JJ.

HOOD, P.J. These consolidated appeals arise out
of breach of warranty claims made by plaintiffs,
Alan D. Latimer and Jack Heckroth, involving the
sale of defective bean seed by defendant and third-
party plaintiff William Mueller & Son, Inc. Follow-
ing a jury verdict in favor of plaintiffs, Mueller
was awarded partial indemnity from third-party
defendant Conida Warehouses, Inc. Mueller and
Conida appeal as of right from the verdict and
judgment. C & B Cattle Company cross-appeals.

* Recorder's Court judge, sitting on the Court of Appeals by assign-
ment.

Each of the plaintiffs is a farmer of land located in Tuscola County, Michigan. In the winter of 1976 each placed an order for Idaho grown Manitou light red kidney bean seed with Mueller, a local retailer of seed.

Mueller purchased the seed from Conida. The seed supplied by Conida, "lot 112", was grown by C & B Cattle Company in Idaho from parent seed supplied by Conida. The seed crop was inspected by the Idaho Department of Agriculture and by Conida's and C & B's employees.

Conida packaged the seeds in bags supplied by Mueller and attached three tags to the bags. One tag set forth the germination of the seed and its purity. The second tag, the "green tag", was provided by the State of Idaho and indicated that, pursuant to inspection by the Idaho Department of Agriculture, the seed met Idaho standards for field and windrow inspection. The third tag was a disclaimer of warranties expressly limiting Conida's liability to the purchase price of the seed and disclaiming any warranties for merchantability or fitness for a particular purpose.

The seed was shipped directly from Conida to Mueller in April of 1977. The seed was not thereafter tested for bacterial diseases prior to distribution by Mueller to plaintiffs. Tests were not conducted on the seed because the state laboratories were then closed for the year and because testing of the seed, which had a good reputation for not carrying bacterial diseases, was generally regarded in the trade as unnecessary.

The seed was planted by Latimer and Heckroth between mid-May and early June of 1977. During late June or early July, plaintiffs noticed a yellowing of the young bean plants. The plants were examined and found to be suffering from "internal halo blight", a seed-borne bacterial disease. In

spite of attempts to control the disease, crop production and quality were substantially reduced because of the blight.

On June 23, 1980, Heckroth filed a complaint against Mueller for breach of express and implied warranties. A similar complaint was filed by Latimer on June 25, 1980. Plaintiffs alleged that Mueller had expressly warranted the bean seed to be free from disease and had impliedly warranted to plaintiffs that the seed was suitable for planting on plaintiffs' farms.

Mueller answered the complaints and filed a third-party complaint against Conida in each of the actions. Mueller asserted a right to indemnification or contribution from Conida for any liability incurred by Mueller arising out of the matters set forth in plaintiffs' complaints. According to Mueller, Conida was primarily and actively responsible for any of the alleged breaches of warranty or damages to plaintiffs and Mueller was only secondarily or passively responsible.

Conida generally denied liability for the alleged breaches of warranty and asserted, as an affirmative defense, that the warranty tag on the beans limited its liability, if any, to the purchase price of the seed. In addition, Conida filed in each of the actions a complaint against C & B, seeking indemnity and contribution from C & B on the basis that the seed-transmitted disease was the result of C & B's negligence. These complaints were amended to include allegations that C & B had breached express and implied warranties to Conida.

C & B filed motions for accelerated judgment based on the grant of a directed verdict in favor of C & B by the Gratiot Circuit Court on an identical indemnity claim based on negligence filed by Conida against C & B. See *Mallory v Conida Warehouses, Inc,* 134 Mich App 28; 350 NW2d 825

(1984). According to C & B, the directed verdict in *Mallory,* which arose from the purchase of bean seed from the same "lot 112", collaterally estopped Conida from asserting its negligence claim against C & B in the Latimer and Heckroth actions. Conida answered that collateral estoppel did not apply because the directed verdict in *Mallory* was granted after opening statement but prior to the entry of any evidence.

Shortly after the Latimer and Heckroth actions were consolidated, C & B filed a motion for summary judgment arguing that Conida had failed to state a claim for negligence or breach of express or implied warranties.

After a hearing, the trial court granted summary judgment to C & B on Conida's implied warranty claim, finding that no "sale" of seed occurred by C & B to Conida as the parent seed had been supplied by Conida and the seed crop itself remained the property of Conida at all times. The trial court also granted summary judgment in favor of C & B on the express warranty claim because the claim was not properly pled. The trial court, however, denied summary judgment on the negligence claim.

By special verdict, the jury found that Mueller had breached express and implied warranties of merchantability. The jury awarded $31,457.52 in damages to Heckroth and $28,943 in damages to Latimer. The jury further found in each case that 25 percent of the damages were attributable to Mueller's breach of an express warranty, 25 percent were attributable to Mueller's breach of implied warranty, and 50 percent were attributable to Conida's breach of implied warranty. On the indemnity claim by Conida against C & B, the jury determined that of the 50 percent of plaintiffs' damages attributable to Conida 50 percent of that

amount was caused by Conida's breach of implied warranty, 25 percent was caused by Conida's negligence, and 25 percent by C & B's negligence.

Pursuant to hearing on the parties' trial and post-trial motions, Mueller's motion for a directed verdict on plaintiffs' claims for breach of express warranty was denied as well as Conida's motion for a directed verdict on the basis of the disclaimer tags attached to the bags of seed. The trial court also found that the evidence was sufficient to submit to the jury the question of whether Mueller had breached an implied warranty to plaintiffs and reaffirmed its prior determination that collateral estoppel did not preclude Conida from asserting its negligence action against C & B. Finally, the trial court ruled that Idaho law had been properly applied in regard to Conida's indemnity claim against C & B and that under Idaho law Conida's negligence claim against C & B would be barred because of Conida's own negligence.

A judgment was entered by the trial court on June 18, 1984, awarding plaintiffs damages and interest against Mueller and providing that Mueller could recover from Conida 75 percent of the sums awarded to plaintiffs. Conida's complaint against C & B was dismissed.

## WAS THERE SUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICT THAT MUELLER WAS LIABLE TO LATIMER FOR BREACH OF EXPRESS WARRANTY?

After plaintiffs had rested their respective cases, Mueller moved for a partial directed verdict on plaintiff Latimer's express warranty claim on the basis of insufficient evidence. Mueller's motion was denied by the trial court.

A motion for directed verdict may only be granted when no factual question exists upon

which reasonable minds can differ. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975). In reviewing a trial court's denial of a motion for directed verdict, this Court views the evidence in the light most favorable to the nonmoving party to determine whether a prima facie case has been established. *Id.* See also *May v Parke Davis & Co,* 142 Mich App 404, 411; 370 NW2d 371 (1985).

Section 2313 of the Uniform Commercial Code provides that express warranties are created by a seller upon:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

"(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the good shall conform to the sample or model." MCL 440.2313(1); MSA 19.2313(1).

In subsection (2), the code further provides:

"It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." MCL 440.2313(2); MSA 19.2313(2).

In the present case, Latimer could not point to any statements made by Mueller which supported his claim that Mueller expressly warranted the

seed to be disease free; and the inspection tag attached to the seed stating that the seed met Idaho standards does not support this allegation, since that tag was provided by the Idaho Department of Agriculture, not Mueller, and does not purport that the beans were disease free.

At most the evidence established that Latimer had an "understanding" that the seed was disease free. Moreover, it appears that this understanding was derived from Latimer's extensive experience with the seed in prior years, not from any express representations made by Mueller.

Accordingly, even viewing the evidence in a light most favorable to Latimer, we cannot conclude that reasonable persons could find that Mueller expressly warranted the seed to be disease free. Therefore, the trial court erred in denying Mueller's motion for partial directed verdict on Latimer's breach of express warranty claim.

## DID THE TRIAL COURT ERR IN DENYING CONIDA'S MOTION FOR DIRECTED VERDICT ON THE BREACH OF IMPLIED WARRANTY CLAIMS?

Conida, the distributor of the seed supplied to Mueller, argues that, with regard to the breach of implied warranty of merchantability, the trial court should have determined as a matter of law, based on the evidence of the customary usage in the seed industry, that no seed producer can warrant against disease. Therefore, Conida argues, there was no breach of warranty under the Uniform Commercial Code as the seed sold by Conida was merchantable at the time.

In the alternative, Conida argues, if the seed were not merchantable, Mueller's recovery is limited to the purchase price of the seed as specified on the disclaimer attached to the seed bags.

We find Conida's arguments skewed and without merit.

The jury found Conida liable for 50 percent of plaintiffs' damages based on a theory of breach of implied warranty of merchantability. Therefore, our first inquiry should be whether the evidence was sufficient to support this verdict. We hold that it was.

In *Mallory v Conida Warehouses, Inc, supra,* p 32, a case also arising out of the sale of bean seeds from lot 112, this Court held that, since the sale of seeds in question was clearly subject to the Uniform Commercial Code, MCL 440.2102, 440.2105(1); MSA 19.2102, 19.2105(1), implicit in the contract of sale is a warranty that the goods are of merchantable quality. MCL 440.2314; MSA 19.2314. None of the authorities cited by Conida persuades us to depart from this holding.

Under an implied warranty of merchantability the seller warrants that the goods are fit for the ordinary purposes for which the goods are used.[1] *Bosway Tube & Steel Corp v McKay Machine Co,* 65 Mich App 426, 431; 237 NW2d 488 (1975), *lv den* 397 Mich 817 (1976).

Specifically, the goods, to be merchantable, must at least:

"(a) pass without objection in the trade under the contract description; and

"(b) in the case of fungible goods, are of fair average quality within the description; and

"(c) are fit for the ordinary purposes for which such goods are used; and

---

[1] Conida's liability is not premised upon an implied warranty of fitness for a particular purpose, MCL 440.2315; MSA 19.2315, which is distinct from an implied warranty of merchantability, MCL 440.2314; MSA 19.2314. See *Bosway Tube & Steel Corp v McKay Machine Co,* 65 Mich App 426, 431; 237 NW2d 488 (1975), *lv den* 397 Mich 817 (1976).

"(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

"(e) are adequately contained, packaged, and labeled as the agreement may require; and

"(f) conform to the promises or affirmations of fact made on the container or label if any." MCL 440.2314(2); MSA 19.2314(2).

Further, "unless excluded or modified (section 2316) other implied warranties may arise from course of dealing or usage of trade". MCL 440.2314(3); MSA 19.2314(3).

In the present case, there was sufficient evidence, when viewed in a light most favorable to the plaintiffs, of a course of dealing and usage in the seed trade to support a verdict of breach of implied warranty.

First, there was considerable testimony that bean seed grown in Idaho had a general reputation in the trade for being disease-free. Even though the Manitou variety was not itself resistant to blight, Manitou seeds grown in Idaho were expected to be disease-free.

Second, there was expert testimony that, while there was no absolute guarantee that Idaho bean seed would not carry blight, halo blight was considered very rare and unexpected in Idaho seed. In fact, persons in the industry relied so strongly on the absence of disease in Idaho seed that tests for bacterial diseases were not normally conducted on Idaho seed in Michigan even though such tests were made on seed produced elsewhere.

Finally, there was evidence indicating that the seed could only have been infected with the bacteria in Idaho and that the number of Michigan fields infested with halo blight from lot 112 evidenced such a high level of contamination that it

should have been detectable in the Idaho fields when the seed was grown.

From the foregoing, we conclude that there was substantial evidence that "average quality" Idaho-grown Manitou bean seed was seed with a very low level of seed-borne bacterial disease, if not seed absolutely free of disease. The evidence also established that the seed in lot 112 was so highly contaminated with halo blight bacteria that almost every farmer who purchased seed from lot 112 experienced the spread of blight throughout his fields. Accordingly, the evidence was sufficient to support a finding that the seed was not merchantable at the time it was sold.

Conida argues, however, that the disclaimer of warranties tag on the seed bags precluded submission to the jury of the question of implied warranty, even if there was evidence that the seed was not merchantable. Under § 2316 of the UCC an implied warranty of merchantability may be excluded or modified under certain circumstances by a disclaimer of warranties. Section 2316 provides in pertinent part:

"(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'

"(3) Notwithstanding subsection (2)

"(a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclu-

sion of warranties and makes plain that there is no implied warranty; and

\* \* \*

"(c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade." MCL 440.2316; MSA 19.2316.

In the case at bar, the disclaimer attached to the seed bags stated:

"Warranty. In lieu of all other warranties, express or implied, (including any implied warranty of merchantability, or fitness for a particular purpose), and all other obligations or liabilities, we warrant to the extent of the purchase price the seeds we sell are as described by us on our container within recognized tolerances. Our liability whether contractual, for negligence or other wise, is limited in amount to the purchase price of the seeds under all circumstances and regardless of the nature, cause or extent of the loss. And as a condition to any liability on our part, we must receive notice by registered mail of any claim that the seed is defective within thirty days after the defect in the seed becomes apparent. Seeds no [sic] accepted under these terms and conditions must be returned at once in original unopened containers and purchase price will be refunded. Conida expressly disclaims any warranty for merchantability or fitness for a particular purpose."

The instant trial court declared the disclaimer invalid because it was insufficiently conspicuous and it was an unconscionable attempt to limit liability for latent defects. We agree.

"Conspicuous" is defined in the UCC as follows:

" 'Conspicuous': A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: non-negotiable bill of lading) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color.

But in a telegram any stated term is 'conspicuous'. Whether a term or clause is 'conspicuous' or not is for decision by the court." MCL 440.1201(10); MSA 19.1201(10).

Examination of the disclaimer reveals that the word warranty appears in capitalized letters at the top of the tag and the balance of the language is in standard type; no contrasting color or particular emphasis is placed on any portion of the tag and the tag was attached with two other tags to the bag. From this examination, it can be properly concluded that the tag was insufficiently conspicuous because the heading "warranty" suggests that warranties were included rather than excluded and because the disclaiming language on the tag was the least conspicuous writing attached to the bag. See *Mallory v Conida Warehouses, supra.*

Moreover, contrary to Conida's assertion, the evidence was sufficient to establish that a disclaimer of warranty was not created by trade usage. Heckroth testified that he was unfamiliar with the warranty tag and did not notice it until after the seed was planted. Latimer testified that he did not read the warranty tag when he purchased the seed and did not believe the tag applied to him. Thus, while the evidence may have established that such tags were generally used in the trade, it did not establish a mutual understanding between the seed producers and farmers that the warranty tags applied to the farmers. See MCL 440.1205; MSA 19.1205.

We also find that limiting the plaintiff's recovery to the purchase price of the seed would lead to an unconscionable result. Under the Uniform Commercial Code, parties to a sales agreement may agree to limit remedies and damages. See MCL 440.2718, 440.2719; MSA 19.2718, 19.2719. See also

MCL 440.2316(4); MSA 19.2316(4). However, where circumstances cause a specified remedy to fail of its essential purpose, remedy may be had as provided elsewhere in the code. MCL 440.2719(2); MSA 19.2719(2). Moreover, consequential damages may be limited or excluded unless an unconscionable result would be worked. MCL 440.2719(3); MSA 19.2719(3).

In the case at bar, Heckroth expended $1,486.66 on the seed and suffered damages as a consequence of the blight in the amount of $29,160. Latimer expended $1,400 for the seed and suffered damages in the amount of $27,540.

Unconscionability should be determined as of the time the contract is made. Practice Commentary to UCC § 2-302, MCL 440.2302; MSA 19.2302. In this case, where the defect could not be discovered until after the seed was planted, the remedy prescribed in the limitation of liability clause is an illusory one which represents no remedy at all in that it fails of its essential purpose. Were we to hold plaintiffs to this remedy, unconscionability would clearly result. See *Mallory v Conida Warehouses, supra,* and *Majors v Kalo Laboratories, Inc,* 407 F Supp 20 (MD Ala, 1975).

Utilizing this same reasoning in analyzing the applicability of the limitation of liability clause to Mueller, we reach a similar result. Therefore, we find that the limitation of liability clause is invalid as to Mueller because it is unconscionable. See *Majors v Kalo Laboratories, supra.*

IS MUELLER ENTITLED TO INDEMNITY FROM CONIDA?

Liability for the plaintiffs' damages was proportioned as follows: 25 percent to Mueller on a breach of express warranty theory, 25 percent to Mueller on a breach of implied warranty of mer-

chantability, and 50 percent to Conida on a breach of implied warranty of merchantability. The trial court allowed Mueller to recover on its indemnity complaint against Conida 75 percent of the sums awarded to plaintiffs. We affirm; and, because of our decision under the first issue that the evidence was insufficient to support the jury verdict of breach of express warranty as to Latimer, we further hold that Mueller is entitled to 100 percent indemnification for the damages awarded to Latimer.

Mueller's right to recovery against Conida is based upon common law indemnity. "Common law indemnity is based on the equitable principle that where the wrongful act of one results in another being held liable, the latter party is entitled to restitution from the wrongdoer." *Hill v Sullivan Equipment Co,* 86 Mich App 693, 696; 273 NW2d 527 (1978), *lv den* 406 Mich 880 (1979). The right can be enforced only where liability arises vicariously or by operation of law from the wrongful act of the party from whom indemnity is sought. *Home Ins Co v Jones & Lamson,* 144 Mich App 91, 97; 373 NW2d 249 (1985), citing *Skinner v D-M-E Corp,* 124 Mich App 580, 584; 335 NW2d 90 (1983) and *Dale v Whiteman,* 388 Mich 698, 704; 202 NW2d 797 (1972). In other words, common law indemnification is only available to a party who can plead and prove freedom from active fault. *Clark Equipment Co v Jones & Lamson, supra; Skinner v D-M-E, supra.*

In the cases at bar, the trial court allowed Mueller a right to indemnification against Conida for damages incurred as a result of the plaintiffs' claims for breach of implied warranty of merchantability.[2] Except where based upon defective

---

[2] Conida argues that Mueller's liability was premised on breach of

design, a breach of implied warranty of merchantability arises without proof of fault and solely by operation of law. See *Prentis v Yale Manufacturing Co,* 421 Mich 670, 692-693; 365 NW2d 176 (1984); *Home Ins Co v Jones & Lamson, supra.* See also *Skinner v D-M-E, supra,* pp 586-587; *Grayson v Chambersburg Engineering Co,* 139 Mich App 456, 462; 362 NW2d 751 (1984). Because Mueller's liability for breach of implied merchantability arose solely by operation of law, and not because of any wrongdoing on its own part, Mueller is entitled to indemnification from Conida.

### DID THE TRIAL COURT ERR IN FAILING TO FIND THAT CONIDA WAS COLLATERALLY ESTOPPED FROM ASSERTING NEGLIGENCE AGAINST C & B?

In its indemnity action against C & B, Conida asserted that C & B was negligent in the growing or inspection of the seed from lot 112. Conida admits that it asserted this identical claim against C & B in the Gratiot County action, *Mallory v Conida Warehouses, supra,* an action also rising out of the distribution in Michigan of seed from lot 112.

In *Mallory,* the trial court dismissed the negligence claim against C & B at the end of Conida's opening statement. The dismissal was based on Conida's failure to allege the ultimate facts which were essential to its cause of action. This Court affirmed the trial court's action. 134 Mich App 33.

C & B now argues that the principles of collateral estoppel dictate that the dismissal of the negligence claim in *Mallory* bars the negligence claim brought by Conida in the present case.

In *Stolaruk Corp v Dep't of Transportation,* 114

implied warranty of fitness for a particular purpose. However, this contention is totally unsupported by the record.

Mich App 357, 361-362; 319 NW2d 581 (1982), this Court succinctly set forth the doctrine of collateral estoppel:

"Collateral estoppel bars the relitigation of issues previously decided in a first action when the parties to a second action are the same; where the second action is a different cause of action, the bar is conclusive regarding issues actually litigated in the first action. *Braxton v Litchalk,* 55 Mich App 708, 718; 223 NW2d 316 (1974). In order for collateral estoppel to apply, the same ultimate issues underlying the first action must be involved in the second action. The parties must also have had a full opportunity to litigate the ultimate issues in the former action. *Fifield v Edwards,* 39 Mich 264 (1878). Finally, collateral estoppel *only* applies where there is mutuality of estoppel. Mutuality of estoppel is present if both litigants in the second suit are bound by the judgment rendered in the first suit. *Braxton v Litchalk, supra,* 720, *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37, 42-43; 191 NW2d 313 (1971)."

Application of collateral estoppel in this case depends upon whether a claim had been "actually litigated" when it had been dismissed at the close of the claimant's opening statement pursuant to a motion for directed verdict.

A claim has been actually litigated when it has been put in issue by the pleadings, submitted to the trier of fact for determination, and is thereafter determined. *Sahn v Brisson,* 43 Mich App 666, 670; 204 NW2d 692 (1972).

A judgment must be rendered on the merits before it may constitute a bar to any subsequent claim. *Malesev v Garavaglia,* 12 Mich App 282, 285; 162 NW2d 844 (1968). "A directed verdict after opening statement is proper only when the opening statement plus the pleadings fail to establish plaintiff's right to recover." *Bell v Merritt,* 118

Mich App 414, 418; 325 NW2d 443 (1982), *lv den* 417 Mich 954 (1983), citing *Ambrose v Detroit Edison Co,* 380 Mich 445; 157 NW2d 232 (1968). "To warrant the court in directing a verdict for defendant upon [the opening] statement, it is not enough that the statement be lacking in definiteness but it must clearly appear, after resolving all doubts in plaintiff's favor, *that no cause of action exists."* (Emphasis added.) *Best v District of Columbia,* 291 US 411, 415-416; 54 S Ct 487; 78 L Ed 882 (1934), cited in *Ambrose v Detroit Edison Co, supra,* p 463.

Thus, like a directed verdict after the close of proofs or a motion for summary judgment for failure to state a cause of action, a directed verdict after opening statement, in our view, is a judgment on the merits of an issue actually litigated and is thus entitled to collateral estoppel effect. See 1 Restatement Judgments, 2d, § 27, Comment d, p 255; 46 Am Jur 2d, Judgments, § 515, pp 667-668.

Therefore, the trial court erred in refusing to apply the doctrine of collateral estoppel to bar Conida's negligence claim against C & B, and C & B should have been dismissed from the case on the basis of collateral estoppel.

## CONCLUSION

In summary, we hold that there was insufficient evidence to support the jury's verdict that Mueller breached an express warranty as to Latimer and that this claim is dismissed. We further hold that the evidence was sufficient to support the verdicts in favor of plaintiffs and against Conida on the breach of implied warranty of merchantability claims and that the disclaimer of warranties by Conida was invalid and did not circumscribe its

liability to either plaintiffs or Mueller. Additionally, because Mueller's liability to plaintiffs was based on the breach of implied warranties of merchantability which arose solely by operation of law and through no fault of its own, Mueller is entitled to indemnification from Conida for plaintiffs' recovery based on that theory. Finally, the trial court should have given collateral estoppel effect to the directed verdict granted on the negligence claim brought by Conida and against C & B in *Mallory v Conida Warehouses, supra.* Therefore, C & B should have been dismissed from this suit on that basis.

Our disposition of these issues makes review of the other issues on appeal unnecessary.

Affirmed in part; reversed in part.