CONTOUR MEDICAL TECHNOLOGY, INC., )
                                          )        **Rutherford Chancery**
          **Plaintiff/Appellant,**       )        **No. 95MI-705**
                                          )
**VS.**                                   )
                                          )        **Appeal No.**
**FLEXCON COMPANY, INC.,**                )        **01A01-9707-CH-00315**
                                          )
          **Defendant/Appellee.**         )

## IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

## APPEAL FROM CHANCERY COURT OF RUTHERFORD COUNTY
## AT MURFREESBORO, TENNESSEE

## HONORABLE DON R. ASH, JUDGE

**FILED**

May 6, 1998

Cecil W. Crowson
Appellate Court Clerk

John F. Quinn
2200 First Union Tower
150 Fourth Avenue North
Nashville, TN 37219
ATTORNEY FOR PLAINTIFF/APPELLANT

Gregory Mitchell
The Southern Turf Building
222 Fourth Avenue North
Nashville, TN 37219
ATTORNEY FOR DEFENDANT/APPELLEE

## AFFIRMED AND REMANDED.

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCURS:
BEN H. CANTRELL, JUDGE

CONCURS IN RESULT:
WILLIAM C. KOCH, JR., JUDGE

**CONTOUR MEDICAL TECHNOLOGY, INC.,**  )
                                        )    **Rutherford Chancery**
      **Plaintiff/Appellant,**         )    **No.  95MI-705**
                                        )
**VS.**                                 )
                                        )    **Appeal No.**
**FLEXCON COMPANY, INC.,**              )    **01A01-9707-CH-00315**
                                        )
      **Defendant/Appellee.**          )

# O P I N I O N

The plaintiff, Contour Medical Technology, Inc., has appealed from a partial summary judgment dismissing that part of plaintiff's claim against the defendant, Flexcon Company, Inc., which seeks consequential damages resulting from defects in material purchased by plaintiff from defendant.  The Trial Judge directed entry of final judgment as provided by TRCP Rule 54.02.

The sole issue on appeal is whether the Trial Judge erred in the entry of said partial summary judgment.

Plaintiff is a manufacturer and distributor of devices used in health care to administer electrocardiogram tests which involves the attachment of electrical conductors (wire) to various parts of the human body to monitor the characteristics of pulses of blood circulation. Plaintiff's product, called an electrode, is attached to the end of each conductor and the electrode is then attached to the body of the patient by an adhesive substance.  The electrodes involved in this case were supplied with small strips or patches of adhesive material one side of which was supposed to stick securely to the electrode, and the other side of which was supposed to stick to the skin of the patient until removed at the conclusion of the test.

The defendant manufactured and sold to plaintiff sheets of adhesive material out of which defendant cut the small patches to fit to the electrodes.  The material was covered on both sides with a protective material which was "peeled" or removed from one side of the

adhesive material immediately before attaching it to the electrodes and, later, immediately before attaching the electrode to the skin of the patient.

The alleged defect in the adhesive material was that it did not adhere satisfactorily to the electrode or the patient's skin. Whether the goods were actually defective is disputed and remains unresolved at the trial level. This appeal only concerns the validity of the limited remedy contained in the seller's forms.

It is undisputed that the particular shipment of material involved in this case was ordered by telephone as a result of previous oral solicitation by defendant's salesman. There is no written order in the record.

The material was shipped on August 20, 1993. On the same date, defendant mailed to plaintiff an "Acknowledgment," thanking plaintiff for the order. On the face of this order was the following message:

> Thank you very much for your order. We have entered and scheduled your order per the above specifications. If this is not correct, please contact us immediately. Refer to our production order numbers shown at the upper right. This order is subject to the terms and conditions shown on the reverse side of this acknowledgment.

CUSTOMER ACKNOWLEDGMENT

On the reverse side of the acknowledgment in fine but readable print were 24 numbered "Terms and Conditions" of which number 10 reads as follows:

> Seller warrants that the materials will be delivered free from any lawful security interest or other lien or encumbrance unknown to buyer and that the materials will be free from defects in material and workmanship. There is no implied warranty of merchantability or fitness for a particular purpose. There is no other warranty expressed or implied, except such as is expressly set forth herein. Seller will not be liable for any general, consequential or incidental damages, including without limitation any damages for loss of use or loss of profits, for any breach of warranty or for negligence, seller's liability and buyer's exclusive remedy being expressly limited

-3-

to the repair of defective materials or the shipment of equivalent materials F.O.B. the shipping point indicated on the face of order acknowledgment, or the repayment of the purchase price upon return of the materials, or the granting of a reasonable allowance on account of any defects as seller may elect. Except as otherwise stated, any claim on account of defective materials or for any other cause whatsoever will conclusively be deemed waived by buyer unless written notice thereof is given to seller within thirty days after date of shipment. Notwithstanding the foregoing, if buyer claims materials does not conform to the order, buyer must notify seller with ten days of receipt of shipment. Seller will be given reasonable opportunity to investigate all claims, and no materials may be returned by buyer to seller until after receipt by buyer of definite shipping instructions from seller. (Emphasis supplied)

The invoice for the shipment contained the following typed note:

If this invoice is paid and postmarked on or before 8/20/93, you may deduct a 1.0% discount on $1,918.88 in the amount of $19.19. The total invoice amount due would be $1,973.09. DISCOUNTS ARE NOT ALLOWED ON THE S & H PORTION OF THIS INVOICE.

Printed on the face of the invoice in bold type were the words:

OUR LIABILITY IS LIMITED TO THE VALUE OF
MATERIAL OR REPLACEMENT OF SAME

It is undisputed that the invoice was discounted and paid by the plaintiff.

The buyer argues that the seller's language limiting the buyer's remedies did not become a part of the contract, or if it did, it failed of its essential purpose. See TCA § 47-2-719(2).[1]

Plaintiff's first argument is:

I.      The Trial Court erred in holding that the language on the back of Flexcon's acknowledgment of order form was both conspicuous and formed a part of the parties' circle of assent.

---

[1] The buyer's objection to the seller's limiting language is based on a "conspicuous" or "circle of assent" argument. Significantly, the buyer does not object on the basis of the "battle of forms" in TCA § 47-2-207. Therefore, we will not address that problem, either.

We note that this controversy concerns a limitation of the buyer's remedies under TCA § 47-2-719 and is not about an exclusion or modification of warranties under TCA § 47-2-316.

TCA § 47-2-719 provides:

> (1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages:
>
>> (a)  The agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and
>>
>> (b)  resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
>
> (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in chapters 1-9 of this title.
>
> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

It is apparent that this section does not impose a requirement that contract clauses limiting remedies be conspicuous. In that respect it is different from TCA § 47-2-316, which applies to written contract provisions that exclude or modify warranties.

The plaintiff, nevertheless, relies on this court's opinion in *Board of Directors v. Southwestern Petroleum Corp.*, 757 S.W.2d 669 (Tenn. App. 1988), for the proposition that a limitation of remedy provision must be conspicuous. In that case, however, the court discussed the requirement of conspicuousness only in connection with the seller's argument

about the disclaimer of warranties.  Thus, there is no requirement in the Code or in our case law that limitation of remedies clauses must be conspicuous.

They should, however, be a part of the parties' agreement.  In other words, they should be within the "circle of assent," of which we spoke in *Parton v. Mark Pirtle Oldsmobile*, 730 S.W.2d 634 (Tenn. App. 1987).  In *Parton* we quoted Professor Karl Llewellyn on the problem of contract formation for the sale of goods under the Uniform Commercial Code:

> Instead of thinking about "assent" to boilerplate clauses, we can recognize that so far as concerns the specific, there is no assent at all.  What has in fact been assented to, specifically, are the few dickered terms, and the broad type of the transaction, and but one more.  That one thing more is a blanket assent (not a specific assent) to any not unreasonable or indecent terms the seller may have on his form,, which do not alter or eviscerate the reasonable meaning of the dickered terms.  The fine print which has not been read has no business to cut under the meaning of those dickered terms which constitute the dominant and only real expression of agreement, but much of it commonly belongs in.  K. Llewellyn, *The Common Law Tradition: Deciding Appeals § 370 (1960).*

730 S.W.2d at 637.

In *One Stop Supply, Inc. v. Ransdell*, No. 01-A-01-9509-CV-00403 (filed at Nashville April 19, 1996), we held that the circle of assent included "the provisions in the form over which the parties actually bargained and such other provisions that are not unreasonable  in view of the circumstances surrounding the transaction."  In this case we think the buyer actually assented to the seller's terms.

Plaintiff emphasizes the obscurity of the disclaimer in the midst of the fine print on the reverse side of the acknowledgment quoted above, but does not discuss the more conspicuous text on the face of the acknowledgment.  The acknowledgment drew attention to the terms on the reverse side.  But, of greater importance, is the invoice itself, which accompanied each shipment of the material and included on its face, in bold face type, the statement that "OUR LIABILITY IS LIMITED TO THE VALUE OF MATERIAL OR REPLACEMENT OF SAME."  The invoice also included a one percent discount for prompt payment.  When the

plaintiff paid the invoice in question it took the discount. We think that assent to the other terms on the face of the invoice may be inferred from these facts.

If we assume, however, that the plaintiff did not specifically accept the seller's terms, they still fall within the circle of assent because they are reasonable in view of the circumstances surrounding the transaction. We are dealing with a transaction between commercial entities, sophisticated parties that buy and sell goods with regularity. Limitation of damages clauses are part of the world in which they operate; they are expressly approved by the bible of commercial transactions, the Uniform Commercial Code. Therefore, we cannot say that the terms were unreasonable.

*Board of Directors of City of Harriman School District v. Southwestern Petr. Corp.*, Tenn. App. 1988, 757 S.W.2d 669, involved the renewal of a felt and asphalt roof on a school. The defendant furnished the material, but the material was applied by an independent roofer who had been designated as its sales representative. The school superintendent signed the order to purchase the materials.

The opinion of this Court states:

> SWEPCO relies on language on the back of the "SWEPCO ORDER FORM" - a form that Superintendent Williams signed. In a small block on the back of the form with the heading "Conditions" rests the following language in extremely small print:
>
>> It is mutually agreed between buyer and seller that this non-cancelable order contains the entire agreement of the parties. Neither buyer nor seller shall be bound by any agreements, representations or warranties either express or implied including the warranty of fitness for a particular purpose not shown on the original of this order. No verbal statements or agreements shall vary any part of this contract.
>
> There follows further language equally small but in bolder type disclaiming responsibility for resale application and damages resulting from application, and then a further

-7-

paragraph in the same extremely small print regarding credit, title, interest, collection, and shipment.

At no point does the quoted opinion state that a visible notice of the disclaimer appeared on the face of the invoice in plain, readable print as in the present case.

The cited authority is distinguishable from the present case in respect to visible notice on the face of the instrument. The cited authority is also based upon a finding that the man who applied the material was an authorized representative of the manufacturer and that he made express oral warranties contrary to the exclusionary clause. Special damages were claimed in the cited case. On this subject, this Court said:

> [7]     SWEPCO argues that because Williams signed the "SWEPCO ROOF PRODUCTS LIMITED GUARANTEE REGISTRATION CARD," SWEPCO effectively limited the Board of Education's remedies under the contract. We cannot agree. Parties to a contract may modify or limit the remedies available under that contract under the terms of Tennessee Code Annotated § 47-2-719, which in pertinent part reads as follows:
>
> - - - -
>
> (3)     Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

In *Parton v. Mark Pirtle Oldsmobile-Cadillac-Isuzu, Inc.*, Tenn. App. 1987, 730 S.W.2d 634, there was a repair order with a parts warranty on the face of the order and a disclaimer of liability for fire or theft in fine print on the reverse side. The vehicle was stolen from the premises of the repair shop. The owner sued the shop and obtained judgment. This Court affirmed and said:

> The only issue raised by the appellant is:
>
> > "The trial court erred in denying the validity of an exculpatory clause in the contract between the parties executed by Mr. Parton releasing the dealership from any liability for damage to the motor vehicle caused by theft."
>
> The appellant argues that Tennessee recognizes the validity of exculpatory provisions, or that one party may agree that another party will not be liable for future acts of negligence. As a statement of a legal principle, the

appellant's contention is correct. In *Empress Health and Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188, 190 (Tenn.1973), our Supreme Court said:

> It is well settled in this State that parties may contract that one shall not be liable for his negligence to another but that such other shall assume the risk incident to such negligence.

> The party who signs a printed form furnished by the other party will be bound by the provisions in the form over which the parties actually bargained and such other provisions that are not unreasonable in view of the circumstances surrounding the transaction.
>
> - - - -
>
> We think it is simply a matter of ascertaining the agreement of the parties in light of modern notions of fair play: a matter of finding the elusive "circle of assent" which contains the agreement of the parties.

> [3]    With these principles in mind, we think the language relied on by the appellant did not fall within that circle of assent and therefore did not become a part of the agreement between the parties. The provision is hidden in the fine print above the appellee's signature; the section is headed by larger print "Terms cash unless arrangement made." Then appearing in larger print immediately above the appellee's signature are the terms of the parts warranty. There is no indication in the record that the provision contained in the fine print was pointed out to the appellee or that a person of ordinary intelligence and experience would expect that the signed writing relieved the appellant of all liability for damages which might occur while the automobile was in its possession. Therefore, the provision relied on by the appellant did not relieve it from liability for theft of the automobile which the trial fudge found to be a result of the appellant's negligence.

The present case is distinguishable on a number of grounds. Although there is no document signed by the plaintiff, there was a plain notice on the face of the acknowledgment that terms and conditions appeared on the reverse. Also, the exculpatory language did not exclude actual damages, but only special and consequential damages, which, according to the above quoted authority are more often upheld as being "within the circle of assent."

Under the facts and circumstances of the present case, the evidence does not preponderate against the finding that the partial limitation of liability was enforceable.

Since this ruling does not exclude the damages actually sought in the complaint (refund of price paid for material purchases), the fine print exclusion does not destroy the essential remedy, i.e., rescission and refund.

In *Arcata Graphics v. Hildeberg Harris*, 874 S.W.2d 15 (Tenn. App. 1993), this court found such remedies to be "fair and adequate" and noted that TCA § 47-2-719(2) "is concerned with the essential purpose of the remedy chosen by the parties, not with the essential purpose of the Code or of contract law, or with justice and/or equity." 874 S.W.2d at 29.

In contrast, the remedy in *Bd. of Directors v. Southwestern Petroleum Corp.*, 757 S.W.2d 669 (Tenn. App. 1988), was limited to replacing the defective goods up to the total amount of the original purchase. On more than one occasion the seller sent replacement materials, but they also proved to be totally inadequate for the buyer's purposes. Therefore, when the limited replacement remedy failed, the buyer was left without a remedy--a result that violates the letter and the spirit of the UCC. The Comments to § 47-2-719 make it clear that "at least minimum adequate remedies be available." Since we have held in *Arcata Graphics* that the replacement or refund remedies are adequate, we conclude that they are adequate under the circumstances of this case.

The plaintiff also contends that the limited remedy is unconscionable because the defect was latent and could not have been discovered until the harm occurred. *See* § 47-2-719(3). While there are holdings to that effect, *see Latimer v. Williams Mueller & Son, Inc.*, 386 N.W.2d 618 (1986), *Nevill Chem. Co. v. Union Carbide, Corp.*, 422 F.2d 1205 (3rd Cir. 1968), *Frank's Maintenance & Eng'g, Inc. vs. C.A. Roberts Co.*, 408 N.E.2d 403 (Ill. App. 1980), the cases seem to be about evenly split. *Cf. Fleming Farms v. Dixie Agric. Supply, Inc.*, 631 So. 2d 922 (Ala. 1994); *Kleven v. Geigy Agric. Chem.*, 227 N.W.2d 566 (Minn. 1975); *Estate of Arena v. Abbott & Cobb, Inc.*, 551 N.Y.S.2d 864 (N.Y. App. Div. 1990). We

would hesitate to adopt either rule in this case; we think that unconscionability depends more on the circumstances surrounding the transaction than on the latency of the defect. Indeed, a latent defect that cannot be discovered (even by the seller), may be a good reason for the seller to bargain for a limitation on the buyer's remedies.

But we think the record shows that the alleged defect in the defendant's product was not in fact latent. The plaintiff had previously encountered a similar problem with the defendant's product and had tested the product on a limited basis. The record shows that random tests could have been made without destroying an appreciable amount of the product and that the tests would have caught any defects in the areas tested.

TCA § 47-2-719(3) provides:

> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not. [Acts 1963, ch. 81, § 1 (2-719).]

This case does not involve personal injury or consumer goods, but commercial loss. Therefore, the limitation of consequential damages is not presumed unconscionable. The evidence in this record does not demonstrate that the limitation of liability was unconscionable.

The judgment of the Trial Court is affimed. Costs of this appeal are assessed against the appellant and its surety. The cause is remanded to the Trial Court for further proceedings.

-12-

**AFFIRMED AND REMANDED.**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCURS:

_____
BEN H. CANTRELL, JUDGE

CONCURS IN RESULT:

_____
WILLIAM C. KOCH, JR., JUDGE