**In re Lindsey WALDORF, Debtor.**

**Karen CRESAP, Personal Representative of the Estates of Joseph and Jean Cresap, Plaintiff,**

v.

**Lindsey WALDORF, Defendant.**

**In re Reinhart A. OLSEN, Debtor.**

**Karen CRESAP, Personal Representative of the Estates of Joseph and Jean Cresap, Plaintiff,**

v.

**Reinhart A. OLSEN, Defendant.**

**Bankruptcy Nos. 95–54088–R, 96–40992–G. Adv. Nos. 96–4356–R, 96–4388–R.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

March 13, 1997.

---

E. Michael Morris, Birmingham, MI, for plaintiff.

Stuart Gold, Southfield, MI, for defendants.

## OPINION REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT

STEVEN W. RHODES, Bankruptcy Judge.

Karen Cresap filed each of these adversary proceedings to obtain a determination that the debt which the debtors Lindsey Waldorf and Reinhart Olsen jointly and severally owe to the estates of Joseph and Jean Cresap is nondischargeable.[1] Cresap alleges that the debt is non-dischargeable because it is the result of one or more of the following: fraud and misrepresentation, under § 523(a)(2)(A); fraud while acting in a fiduciary capacity, under § 523(a)(4); or willful and malicious injury to the property of Cresap, under § 523(a)(6). Cresap now moves for summary

---

1. Joseph and Jean Cresap initiated suit in the Oakland County Circuit Court. Both Cresaps died before the conclusion of their state case, and Karen Cresap is the representative of their estates.

judgment. Waldorf and Olsen respond with cross-motions for summary judgment. The Court consolidated the proceedings for the purpose of resolving these motions together. The Court concludes that Cresap is entitled to a judgment of non-dischargeability under § 523(a)(2)(A) on the basis of collateral estoppel, but that the balance of her claims should be dismissed.

The underlying facts of Cresap's claim have already been the subject of lengthy litigation in state court. On February 3, 1992, Jean and Joseph Cresap ("the Cresaps") brought suit in the Oakland County Circuit Court to recover money which they invested in a corporation, Technology Un–Limited. The Cresaps sued Technology Un–Limited, its successor corporation, Innovative Industries, and the individual debtors, Reinhart Olsen and Lindsey Waldorf. In response to the defendants' motion for summary disposition, the state court dismissed Counts I, II, and VI of the complaint. Count III remained and alleged:

> Fraud and misrepresentation of defendants Technology Un–Limited, Inc., officers, Reinhart A. Olsen, Philip E. Chase, Lindsey Waldorf as officers of the corporation and individually, jointly and severally and its successor corporation, Innovative Industries, Inc. and its president, Elmer Sivacek as an officer of the corporation and individually, jointly and severally.

After protracted litigation, the Cresaps obtained summary disposition on this remaining count. In an order entered on December 7, 1994, the state court found all of the defendants liable. However, this order did not set the amount of damages. The trial judge convened a hearing on damages, but adjourned the hearing to allow the parties to brief the admissibility of certain evidence. The hearing was set to resume on December 27, 1995. When Waldorf and Olsen failed to appear, the trial judge issued final judgment against them in the amount of $279,023. Waldorf and Olsen did not appeal this ruling. On December 29, 1995, Waldorf filed a petition for bankruptcy relief under chapter 7. Olsen filed for chapter 7 relief on January 25, 1996.

After learning of the bankruptcies, Cresap brought these adversary proceedings against Waldorf and Olsen.

Waldorf and Olsen deny that they are indebted to Cresap for the state court judgment and deny that Cresap's claim is nondischargeable.

Cresap now moves for summary judgment, contending that the state court's judgment is binding in this case and collaterally estops Waldorf and Olsen from contesting the non-dischargeability of the debt. In response, Waldorf and Olsen contend that Cresap is not entitled to rely on collateral estoppel. Waldorf and Olsen cross-move for summary judgment, arguing that Cresap's complaint fails to sufficiently state a claim for fraud and for the existence of a fiduciary relationship between the parties.

## II. *This Court must give full faith and credit to the prior state judgment.*

The federal courts employ a variety of doctrines to recognize the validity and effect of prior state judgments, including *res judicata,* collateral estoppel, judicial estoppel, and the Full Faith and Credit Act. The bankruptcy courts do not apply the doctrine of *res judicata* (or "claim preclusion") in dischargeability proceedings since the Supreme Court decided *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). However, the bankruptcy courts can apply the doctrine of collateral estoppel (or "issue preclusion") to avoid relitigating any grounds for non-dischargeability which were litigated in a prior proceeding. *Grogan v. Garner,* 498 U.S. 279, 285, n. 11, 111 S.Ct. 654, 658, n. 11, 112 L.Ed.2d 755 (1991); *Spilman v. Harley,* 656 F.2d 224, 227 (6th Cir. 1981); *Rally Hill Prods. v. Bursack (In re Bursack),* 65 F.3d 51 (6th Cir.1995); *Bay Area Factors v. Calvert (In re Calvert),* 105 F.3d 315 (6th Cir.1997); *Bend v. Eadie (In re Eadie),* 51 B.R. 890, 893 (Bankr.E.D.Mich. 1985).

In *Grogan,* the Supreme Court held that the standard of proof on a claim of non-dischargeability under § 523(a) is the preponderance of the evidence standard. The Court based this conclusion, in part, on its determination that "application of that stan-

dard will permit exception from discharge *of all fraud claims creditors have successfully reduced to judgment.*" *Grogan,* 498 U.S. at 290, 111 S.Ct. at 661 (emphasis added). The Court expressly stated that collateral estoppel principles apply in discharge proceedings, without discussing the matter further. *Id.* at 285, n. 11, 111 S.Ct. at 658, n. 11.

■ In recent years, the Supreme Court has issued a series of decisions expanding the analysis that the federal courts must use to determine whether to give a state judgment preclusive effect. Rather than relying solely on the judicial doctrine of collateral estoppel, a federal court must first consider whether the Full Faith and Credit Act requires it to accord the state judgment the same preclusive effect that the judgment would receive under state law. *See Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986); *Marrese v. Am. Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Matsushita Elec. Indus. Co. v. Epstein,* —— U.S. ——, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996).

The Full Faith and Credit Act states, in relevant part, that state court "judicial proceedings shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738.

The Sixth Circuit has held that the Full Faith and Credit Act applies in dischargeability proceedings. *Bursack,* 65 F.3d at 52–53. Under *Bursack,* the bankruptcy court must initially determine whether a state court judgment would receive preclusive effect in the state where it was rendered. *Id.* at 53. If so, the bankruptcy court must give the state judgment preclusive effect unless it determines that an exception to the Full Faith and Credit Act exists. *Id.*

■ Recently, the Sixth Circuit concluded that the Act would apply without exception even when the underlying state judgment is a default judgment. *Calvert,* 105 F.3d 315. Accordingly, this Court must apply the Full Faith and Credit Act and give Cresap's state judgment the same preclusive effect that is recognized by Michigan law.

### III. *Michigan law employs the doctrine of collateral estoppel to give preclusive effect to prior judgments.*

Michigan courts apply collateral estoppel "to avoid relitigation of claims, and to prevent vexation, confusion, chaos and the inefficient use of judicial resources." *Bd. of County Road Comm'rs v. Schultz,* 205 Mich.App. 371, 377, 521 N.W.2d 847, 851 (1994). The Michigan Supreme Court has explained Michigan's rule of collateral estoppel, as follows:

Collateral estoppel precludes the relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was 1) actually litigated and 2) necessarily determined.

*People v. Gates,* 434 Mich. 146, 154, 452 N.W.2d 627, 630, *cert. den.,* 497 U.S. 1004, 110 S.Ct. 3238, 111 L.Ed.2d 749 (1990).

■ An issue is "actually litigated" if it "is put into issue by the pleadings, submitted to the trier of fact, and determined by the trier of fact." *Latimer v. Mueller & Son, Inc.,* 149 Mich.App. 620, 640–41, 386 N.W.2d 618, 627 (1986); *see also In re Eadie,* 51 B.R. at 894. For collateral estoppel purposes, an issue may be "actually litigated" without a trial. *Latimer,* 149 Mich.App. at 640–41, 386 N.W.2d at 627 (finding that a claim was "actually litigated" for collateral estoppel purposes when the trial court dismissed it on a motion for directed verdict at the close of the claimant's opening statement); *see also Detroit v. Qualls,* 434 Mich. 340, 357, n. 27, 454 N.W.2d 374, 382, n. 27 (1990) (decision rendered by summary disposition constituted decision on the merits).

■ An issue is "necessarily determined" if it is essential to the judgment. *Gates* at 158, 452 N.W.2d at 631.

■ For collateral estoppel, Michigan also requires that the "same parties" are involved in both the initial and the subse-

quent case. This is requirement is known as the doctrine of mutuality of estoppel:

> The doctrine of mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must also have been a party, or a privy to a party, in the previous action. In other words, "[t]he estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him." Although there is a trend in modern law to abolish the requirement of mutuality, this Court reaffirmed its commitment to that doctrine in 1971 in Howell.

*Lichon v. Am. Universal Ins. Co.*, 435 Mich. 408, 427–428, 459 N.W.2d 288, 298 (1990). A party is one who is directly interested in the subject matter, who has a right to make a defense or to control the proceeding, and who has a right to appeal from the judgment. *Howell v. Vito's Trucking & Excavating Co.*, 386 Mich. 37, 43, 191 N.W.2d 313, 315–16 (1971). A person is in privy to a party if, after the judgment, the person has an interest in the matter affected by the judgment through one of the parties, such as by inheritance, succession, or purchase. *Id.*

Accordingly, in order to apply Michigan's doctrine of collateral estoppel, this Court must determine: 1) whether the parties in this case are the same as, or in privy to, the parties to the state case; and 2) whether the issues in this case were "actually litigated" in the state case; and 3) whether the issues were "necessarily determined" in the state case.

### IV. *The Michigan doctrine of collateral estoppel precludes Waldorf and Olsen from relitigating the fraud issues.*

### A. *The parties here satisfy the requirement of mutuality of estoppel.*

The Cresaps' estates have "an interest in the subject matter affected by the judgment" in the Oakland County Circuit Court and in the present dischargeability action. This satisfies the Michigan requirement for mutuality of estoppel. Waldorf and Olsen do not contend otherwise.

### B. *The issues of fraud and misrepresentation were actually litigated in the prior state case.*

The elements of a dischargeability case under 11 U.S.C. § 523(a)(2)(A) for false misrepresentation and fraud are virtually identical to the elements that Michigan requires to establish fraudulent misrepresentation. In a dischargeability proceeding brought pursuant to § 523(a)(2)(A), the issue is whether Cresap's claim resulted from the defendant's false representation or actual fraud:

> (a) A discharge under section 727, 114, 1228(a), or 1328(b) of this title does not discharge an individual from any debt—
>
> . . . .
>
> (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—
>
> > (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

To establish that a debt should be denied discharge under § 523(a)(2)(A), the creditor must prove:

1) that the debtor obtained money through a material misrepresentation;

2) that the debtor knew the representation was false or made the representation with gross recklessness as to the truth;

3) that the creditor relied on the misrepresentation; and

4) that the creditor's reliance was the proximate cause of the loss.

*Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir.1993). The creditor has the burden of proving his case by a preponderance of the evidence. *Grogan*, 498 U.S. at 287, 111 S.Ct. at 659.

■■■ Michigan describes fraud as "an intentional perversion or concealment of the truth for the purpose of inducing another in reliance upon it to part with some valuable thing or to surrender a legal right." *Barkau v. Ruggirello*, 113 Mich.App. 642, 647, 318 N.W.2d 521, 524 (1982). Michigan requires the plaintiff to establish the following elements to prove fraudulent misrepresentation:

1) the defendant made a material representation;

2) it was false;

3) the defendant knew it was false when made, or made it recklessly, without knowledge of its truth, and as a positive assertion;

4) it was made with the intention to induce reliance by the plaintiff;

5) the plaintiff relied on it; and

6) the plaintiff thereby suffered injury.

*Hi–Way Motor Co. v. Intern. Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976).

The Michigan Supreme Court has discussed various standards of proof for fraud, from "clear and convincing" proof to a preponderance of the evidence. *See Mina v. Gen. Star Indemnity Co.,* 218 Mich.App. 678, 682–85, 555 N.W.2d 1, 3–4 (1996) (collecting cases and concluding that "we are unable to say with any degree of certainty exactly what standard of proof courts should apply in fraud cases").

Waldorf and Olsen argue that in the state court proceeding that resulted in the judgment against them, the Cresaps' claim of fraud was not "actually litigated." This argument fails for the following three reasons: 1) Waldorf and Olsen misconstrue Michigan's definition of "actually litigate;" 2) Waldorf and Olsen mischaracterize Cresap's argument in the motion for summary disposition; and 3) Waldorf and Olsen mischaracterize the state court's judgment.

1. *The issue of fraud and misrepresentation was "actually litigated" on the motion for summary disposition.*

■■■ The state case was resolved on summary disposition. A matter need not be fully tried in order to be "actually litigated." Under Michigan law, if an issue is decided on the merits on a motion for summary disposition, it is "actually litigated." *Qualls,* 434 Mich. at 357, n. 27, 454 N.W.2d at 382, n. 27.

Accordingly, a ruling on summary disposition is "a final judgment capable of barring a second lawsuit where the proper circumstances occur." *In re Moon,* 116 B.R. 75, 78 (Bankr.E.D.Mich.1990) (citing *Ferguson v. Montrose,* 75 Mich.App. 596, 598, 255 N.W.2d 700 (1977) and *Curry v. City of Detroit,* 394 Mich. 327, 231 N.W.2d 57 (1975)). Collateral estoppel applies when there is a motion for summary disposition that involves the same matter in issue, the same parties or their privies, and a judgment on the merits of the claim. *Id.*

As the preceding analysis shows, the state law fraud claim presents the same essential elements necessary to prove fraud under § 523(a)(2)(A). The state case involved the same parties or their privies as the present bankruptcy case, and the trial judge ruled on the merits of the case. These factors demonstrate that when the state court entered its summary judgment, the Cresaps' fraud claim was "actually litigated."

2. *Cresaps' pleadings in the state court in support of the motion for summary disposition were based on Count III, fraud and misrepresentation.*

■■■ Count III of the complaint in state court alleged that the individual defendants were personally liable for fraud and misrepresentation. Waldorf and Olsen contend that the Cresaps raised alternative theories of liability in their brief in support of summary disposition.

Far from alleging alternative causes of action, the Cresaps' arguments were advanced to support the claim that the court should pierce the corporate veil to find the individual corporate officers were personally liable for the fraud. These arguments were not additional causes of action.[2] As the Court of Appeals recently stated,

[A]n alter ego claim is not by itself a cause of action. Rather, it is a doctrine which fastens liability on the individual who uses a corporation merely as an in-

---

**2.** In the state court, the Cresaps listed ten separate arguments in support of their position that the individual defendants were hiding behind their corporations to commit fraud; that the corporations had no separate existence apart from the individuals; and that the court should pierce the corporate veils. These arguments were labelled "issues," but each presented a factual allegation, not a separate legal cause of action.

strumentality to conduct his or her own personal business, and such liability arises from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation.

*Spartan Tube and Steel, Inc. v. Himmelspach (In re RCS Engineered Prods. Co., Inc.)*, 102 F.3d 223, 226 (6th Cir.1996). The Court of Appeals then explained Michigan's rule for piercing the corporate veil:

The general principle in Michigan is that separate corporate identities will be respected, and thus corporate veils will be pierced only to prevent fraud or injustice. *Wodogaza v. H & R Terminals, Inc.*, 161 Mich.App. 746, 756, 411 N.W.2d 848, 852 (1987). *See also Wells v. Firestone Tire and Rubber Co.*, 421 Mich. 641, 650, 364 N.W.2d 670, 674 (1984). A court may find that one entity is the alter ego of another and pierce the corporate veil upon proof of three elements: first, the corporate entity must be a mere instrumentality of another; second, the corporate entity must be used to commit a fraud or wrong; and third, there must have been an unjust loss or injury to the plaintiff. *Nogueras v. Maisel & Assoc. of Michigan*, 142 Mich.App. 71, 86, 369 N.W.2d 492, 498 (1985).

*Id.*

The Michigan law on piercing the corporate veil places fraud squarely at issue, as Cresaps' pleadings in the state court demonstrate. All of the arguments raised in Cresaps' motion for summary disposition supported their claim that the court should pierce the corporate veil to hold the individuals liable for fraud.

3. *The state court judgment was based on the claim for fraud and misrepresentation.*

■ Waldorf and Olsen ask this Court to find that the state court judgment did not grant summary disposition on Count III's fraud claim, but rather found the individual defendants liable on a separate theory for breach of contract.

To determine the full meaning and effect of an ambiguous prior state judgment, the bankruptcy court must examine the entire record of the state proceedings. *Wheeler v. Laudani*, 783 F.2d 610, 615–16 (6th Cir. 1986).

The record shows that the state court dismissed the claim of breach of contract, as follows:

As to count one, breach of contract and specific performance. The court finds that plaintiffs have not raised a question of fact as to whether defendant (sic) Olsen and Waldorf ever personally guaranteed the loan or made any promises in their individual capacity to repay it.

Both defendants signed all pertinent documents in their capacity as officers of the corporation. Accordingly[,] the court is going to grant defendant's (sic) motion to dismiss count one of the complaint.

(Tr. of hr'g, May 26, 1993, p. 4). Nothing in the record shows that complaint was amended to reinstate this claim for breach of contract.

Further, nothing in the motion for summary disposition or in the transcript of the oral argument suggests that the Cresaps were asserting a breach of contract claim when they moved for summary disposition. Their attorney's oral argument on the motion supported their allegations of fraud and misrepresentation and their theory of piercing the corporate veil. Cresaps' attorney argued:

... [W]e're asking the Court to find judgment for the plaintiffs and to find that there is personal liability as to the defendants, because they were using the Technology Unlimited Corporation as a sham corporation; Innovative Industries was obviously a sham corporation.

... What we're alleging to the Court is these men didn't just misrepresent, they perpetuated a fraud, they established a sham corporation[.]

... We believe, the plaintiffs believe that these gentlemen utilized Technology Unlimited as a sham corporation of Innovative Industries for their own purpose.

They actually were operating outside the corporate structure, they were attempting to make a profit. They perpetuated a

fraud upon the plaintiffs. They established a sham corporation . . .

. . . So we would ask the Court in this instance, number one, we believe that the documents that we've attached as a loan agreement are valid documents. The interim agreement and the receipt of the interim agreement are contracts where the Cresaps, the plaintiffs, loaned to Mr. Olson and Mr. Waldorf sums of money which they pledged to pay back either directly, through a bridge loan or through patents.

And they also pledged that if there was a successor corporation, that they would pay them back.

They had no intention, we believe, to ever pay the money back if the deal didn't work.

We believe that by their mechanizations in attempting to transfer things from Technology Unlimited and Innovative Industries, they thought they would wipe out the Cresaps and that they would go away.

We're saying to the Court that there was no Innovative Industries, very clearly by the records and by their own admissions now. [T]hey talk of something called Creative we've never heard of, but they did issue stock to Innovative Industries, they had a Board of Directors meeting of Innovative Industries, they transacted business as if there was a real corporation and there was none, nor did they ever file one afterwards to bridge the gap. They never went back and filed the papers, they never filed them before the meeting, never filed them after the meeting.

So there was just an absolute fraud perpetuated not only upon the Cresaps, but every shareholder they invited to the meeting. And that's very clear not only from our pleadings[,] but from theirs.

So we have asked the Court to pierce the corporate veil because in effect they weren't operating as a corporation, they were operating as individuals utilizing a corporate name, utilizing two corporate names, utilizing an alleged partnership merely to bring the people in so they could obtain some money.

. . . [T]he complete identity of interest between the sole shareholders of the corporation may lead the Court to treat them as one for certain purposes. And those purposes are to pierce the corporate veil by a creditor, for creditor's purposes. And in this case, we're saying to the Court that these people are in effect creditors, they made a valid loan agreement, they received no consideration back whatsoever from these gentlemen for it, and we're asking the Court to find on their behalf—you know, there was a time when these gentlemen could have tendered patents that were active. They never did that. We believe they had no desire, didn't feel they had to pay these people back and felt that by creating a sham corporation, Innovative Industries, they could escape payment. . . .

(Tr. of hr'g, July 28, 1994, pp. 4–12). Immediately after the parties concluded oral argument, the judge stated:

Well, the Court is of the opinion that when individuals sign in their own capacity on behalf of a corporation, obviously they have no liability. They're agents of the corporation in this case, as a practical matter, pursuant to the Affidavits, it's unrebutted that there wasn't a corporation and he wouldn't use the words, really, piercing the corporate veil when you don't have a corporation.

But the Court is of the opinion that you're presumed to know the law and you're presumed to know that if you're not just standing as a corporation, that when you sign a document on behalf of the corporation that doesn't exist, that you're bound by the contract entered into personally. And the contract has been breached and the Court is of the opinion that judgment should enter as prayed for and the Court will sign an order to that effect.

The court eventually entered the following order on December 7, 1994:

This matter having come before the Court on Motion of Plaintiffs requesting Summary Judgment against Plaintiffs pursuant to M.C.R. 2.116(A)(2); (B)(1); (C)(9) and (C)(10) and the Court having heard the arguments from each of the respective parties, Plaintiffs have a right to such Summary Judgment as a matter of law;

the Court finds further that the Defendants are to be held personally liable, individually, jointly and severally;

It is The Order of this Court that Summary Judgment shall be entered on behalf of the Plaintiffs and against the Defendants;

It is Further Ordered that a Hearing shall be scheduled for the purpose of taking testimony to establish damages, said hearing is to be held within thirty (30) days of the entry of this Order;

IT IS SO ORDERED.

A finding that the state court's ruling was based on a breach of contract claim would ignore the history and the pleadings in the state case. This Court cannot find that the state court ruled on a claim which had already been dismissed from the suit, which was not discussed in the motion for summary disposition, and which was not presented at oral argument on the motion.

Having chosen not to appeal, Waldorf and Olsen cannot pursue a collateral attack on the merits of the ruling in the Bankruptcy Court. *See In re Gober,* 100 F.3d 1195, 1202–03 (5th Cir.1996) (rejecting debtor's argument that collateral estoppel should not apply in dischargeability proceeding because state judgment did not comport with pleadings); *In re Maurice,* 21 F.3d 767, 774 (7th Cir.1994) (rejecting as collateral attack debtor's argument against use of collateral estoppel).

V. ***This court is precluded by the Full Faith and Credit Act from considering collateral attacks of the state judgment.***

 Waldorf and Olsen argue that the state court's ruling on damages should be set aside because they were not present at the hearing when he ruled. Waldorf and Olsen acknowledge that they were aware of the hearing and that they submitted a brief on issues which the court had identified as relevant. Rather than filing a motion for reconsideration in state court that explains their failure to appear, Waldorf and Olsen ask this Court to ignore the state court's ruling because of their failure to attend the damages hearing. Only the state court is in a position to say whether Waldorf and Olsen's explanation would prompt reconsideration of the issue of damages. The Full Faith and Credit Clause requires this Court to refrain from relitigating the damages when they have already been litigated in state court.

Waldorf and Olsen argue that the state court's ruling on damages is similar to a default judgment and that this Court should find an exception to the Full Faith and Credit Act for default judgments, relying on *Wood v. Dealers Fin. Servs., Inc. (In re Wood),* 199 B.R. 25 (E.D.Mich.1996). However, the Court of Appeals squarely rejected the reasoning of *Wood* when it recently ruled that there is no exception to the Full Faith and Credit Act for default judgments. *Calvert,* 105 F.3d at 322. *Calvert* requires this Court to apply the Full Faith and Credit Act without exception for default judgments, and the Full Faith and Credit Act requires the Court to look to state law to determine the effect of the judgment.

As another bankruptcy court has recently observed, the Michigan Supreme Court has not explicitly announced what preclusive effect it will give to a default judgment. *Vogel v. Kalita (In re Kalita),* 202 B.R. 889, 905 (Bankr.W.D.Mich.1996). The Michigan Court of Appeals has stated that a default judgment is considered a determination on the merits of matters essential to support the judgment. *City of Detroit v. Nortown Theatre, Inc.,* 116 Mich.App. 386, 392, 323 N.W.2d 411, 413–14 (1982); *see also Braxton v. Litchalk,* 55 Mich.App. 708, 717, 223 N.W.2d 316, 316 (1974) (confining its holding to the circumstances of the case).[3]

---

3. This Court recognizes that *Kalita* criticizes Michigan cases such as *Braxton* as "wrongly decided." 202 B.R. at 915. *Kalita* bases this criticism on its interpretation of *Jacobson v. Miller,* 41 Mich. 90, 1 N.W. 1013 (1879), which *Kalita* finds stands for the proposition that "unless a proper answer is filed which identifies facts necessarily in issue, a subsequent judgment is not entitled to collateral estoppel effect because the factual issues were not contested and, hence, not actually litigated." *Id.* at 914. A review of the myriad of other cases which have cited *Jacobson* in the past century shows that *Kalita* is the only court to draw such a broad

This Court has applied the rule to uphold judgments which were entered against defendants who did not attend the hearing at which judgment was issued. *In re Eadie,* 51 B.R. at 893; *Frantz v. Schuster (In re Schuster),* 171 B.R. 807, 812 (Bankr.E.D.Mich. 1994).

Likewise, the Michigan Court of Appeals has refused to allow parties to relitigate issues which were determined against them in previous proceedings which they chose not to attend or appeal. *See Talbot v. Talbot,* 99 Mich.App. 247, 297 N.W.2d 896 (1980) (previous judgment against defendant governed issue when defendant received notice of hearing but chose not to attend because he believed court lacked jurisdiction); *Van Pembrook v. Zero Man. Co.,* 146 Mich.App. 87, 380 N.W.2d 60 (1985) (default judgment would not be set aside where defendant received service and summons, but failed to answer the complaint because it believed that lawsuit was improper); *Harvey Cadillac Co. v. Rahain,* 204 Mich.App. 355, 514 N.W.2d 257 (1994) (default judgment entered as sanction for failure to participate in discovery would not be set aside where defendant's attorney received notice of the motion for default but failed to appear or respond); *Park v. Am. Casualty Ins. Co.,* 219 Mich.App. 62, 555 N.W.2d 720 (1996) (default judgment would not be set aside where defendant's counsel received notice of trial but inadvertently failed to appear).

Here, Waldorf and Olsen were aware of the issues and had participated in the state litigation for years. They filed pleadings regarding the issue of damages and received proper notice of the hearing. They failed to attend the hearing, and the judgment was entered. Neither filed a motion for reconsideration in the trial court, and neither appealed the judgment.

Waldorf and Olsen contend that when they filed bankruptcy, the automatic stay cut off their opportunity to appeal. This is not persuasive. Waldorf and Olsen themselves invoked the automatic stay by filing their bankruptcy petitions. If they had wished to appeal, they could have asked this Court to lift the stay to allow the state appeal. The point is that Waldorf and Olsen cannot use the bankruptcy court to appeal the state court judgment.

## VI. *Waldorf and Olsen are entitled to summary judgment on Cresap's claim of fraud in a fiduciary capacity.*

 Cresap contends that the state court judgment also establishes that the debt is non-dischargeable under § 523(a)(4), which denies discharge for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" The Court of Appeals has explained fraud in a fiduciary capacity, as follows:

A debt created while acting in a fiduciary capacity is a special debt, created by a breach of trust obligations defined by law, and is separate and distinct from any underlying contractual debt which arises from a bankrupt's agreement with respect to goods or services. The question of who is a fiduciary for purposes of section § 17(a)(4) [the predecessor to § 523(a)(4) ] is one of federal law, although state law is important in determining when a trust relationship exists. The term "fiduciary" applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity. Moreover, the requisite trust relationship

---

conclusion. Michigan courts cite *Jacobson* for a more narrow rule of collateral estoppel:

[W]here the subsequent action is based upon a different cause of action from that upon which the prior action was based, the effect of the [prior] judgment is more limited. The judgment is conclusive between the parties in such a case as to questions actually litigated and determined by the judgment. It is not conclusive as to questions which might have been but were not litigated in the original action.

*Howell v. Vito's Trucking and Excavating Co.,* 386 Mich. 37, 42, 191 N.W.2d 313 (1971) (citing *Jones v. Chambers,* 353 Mich. 674, 680, 91 N.W.2d 889, 892 (1958) (citing *Jacobson* )). *Jacobson* simply allowed subsequent litigation between the same parties to adjudicate an issue which was not determined in the initial lawsuit; it does not hold that failure to file an answer precludes a finding that the issue was actually litigated.

must exist prior to the act creating the debt and without reference to it.

*Cashway v. Johnson (In re Johnson)*, 691 F.2d 249, 251–52 (6th Cir.1982) (internal citations omitted). Fiduciary status does not arise from the debtor-creditor relationship alone. *Butler v. Clark (In re Clark)*, 202 B.R. 243, 256 (Bankr.W.D.Mich.1996).

Waldorf and Olsen argue that Cresap has failed to plead any facts or law to support a theory of dischargeability under § 523(a)(4).

The record of the state case shows that Cresap initially argued that there was a "constructive trust" agreement breached by Waldorf and Olsen, but the state court granted defendants' motion for summary disposition and dismissed this count on May 26, 1993. Nothing indicates that this claim was reinstated, and nothing in the state court pleadings suggests that this theory was pursued.

In the present adversary proceeding, Cresap has failed to cite any facts or law which would suggest that Waldorf and Olsen had a fiduciary relationship with the Cresaps. Indeed, the Cresaps are barred from relitigating this issue for the same reasons that Waldorf and Olsen are barred from relitigating the fraud issue. Accordingly, Waldorf and Olsen are entitled to summary judgment on the § 523(a)(4) claim.

### VII. *Waldorf and Olsen are entitled to summary judgment on Cresap's claim of willful and malicious injury.*

Cresap contends that the debt is non-dischargeable under § 523(a)(6), which denies discharge to "any debt for willful and malicious injury by the debtor to another entity." The Court of Appeals has instructed that

> An injury to an entity or property may be a malicious injury within [§ 523(a)(6)] if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite, or ill-will. The word "willful" means "deliberate or intentional," a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause

or excuse, may constitute a willful and malicious injury.

*Perkins v. Scharffe*, 817 F.2d 392, 394 (6th Cir.), *cert. den.*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987). Although Cresap contends that the state judgment shows that the debt is non-dischargeable under § 523(a)(6), nothing in the record shows that a similar state claim was pleaded, briefed, argued, or decided. The pleadings and exhibits in this adversary case fail to set forth any specific facts or law which would support a claim under § 523(a)(6). Therefore, Waldorf and Olsen are entitled to summary judgment on this claim.

### Conclusion

After examining the pleadings and transcripts of the state case, this Court concludes that the issue of fraud and misrepresentation was actually litigated and necessarily determined in the prior state action and that Cresap is entitled to a judgment of non-dischargeability under § 523(a)(2)(A). The Court further concludes that Cresap has failed to come forward with facts or law which would support her claims for non-dischargeability under § 523(a)(4) and (a)(6), and that therefore Waldorf and Olsen are entitled to summary judgment on these two claims.