NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0222n.06

**No. 08-1539**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| In re:  **BRIAN JAMES LIVINGSTON and JOAN ELIZABETH LIVINGSTON,** | ) ) ) | **FILED** **Apr 09, 2010** LEONARD GREEN, Clerk |
| **Debtors.** | ) ) |  |
| ——————————————————— | ) ) |  |
| **BRIAN JAMES LIVINGSTON and JOAN ELIZABETH LIVINGSTON,** | ) ) ) | **ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN** |
| **Defendants-Appellants,** | ) ) |  |
| **v.** | ) ) |  |
| **TRANSNATION TITLE INSURANCE CO.,** | ) ) ) | **OPINION** |
| **Plaintiff-Appellee.** | ) ) ) |  |

———————————————————

Before: GILMAN and GIBBONS, Circuit Judges; and ANDERSON, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.**  Brian and Joan Livingston have appealed the district court's order affirming a decision by the United States Bankruptcy Court for the Eastern District of Michigan granting Transnation Title Insurance Co. ("Transnation") summary judgment in this adversary proceeding under 28 U.S.C. § 157(b)(2)(I).  For the following reasons, we **AFFIRM** the decision of the bankruptcy court.

———————————————————

[*]The Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

**I.**

The bankruptcy court recounted the underlying facts:

> The Debtors owned two properties, one located in Northville, Michigan and one located in Dearborn Heights, Michigan. Each of them was encumbered by a first mortgage. On March 2, 1999, the Debtors granted a second mortgage on both properties to Standard Federal Bank to secure a loan in the amount of $166,000. On November 23, 1999, the Debtors sold the Northville property and conveyed title by warranty deed. The first mortgage was paid but the Standard Federal Bank mortgage was not paid. On April 6, 2000, the Debtors sold the Dearborn Heights property and conveyed title by warranty deed. Again, the first mortgage was paid, but the Standard Federal Bank mortgage was not. On January 24, 2001, Standard Federal Bank foreclosed its second mortgage on the two properties. Transnation issued owner's title insurance policies to the purchasers of both of these two properties. Ultimately, Transnation paid the Standard Federal Bank mortgages and became subrogated to the rights of the purchasers with respect to the two properties.

*Transnation Title Ins. Co. v. Livingston (In re Livingston)*, 368 B.R. 610, 612-13 (Bankr. E.D. Mich. 2007). For at least one of the properties, Joan Livingston held only a dower interest while her husband, Brian Livingston, was the owner. In general, it appears that Joan left financial matters to Brian. At the signing of the second mortgage, she merely signed documents as directed by Standard Federal Bank's agents. Similarly, at closing, Joan Livingston signed the required documents without reading them, believing that the closing agent would include the second mortgages in the title information. She also gave her husband broad power-of-attorney to sign documents releasing her dower interest and to conclude another closing.

The record establishes the Livingstons' alleged misrepresentations. As part of the refinancing transactions, they provided an owner's affidavit and affidavit of no-encumbrance, both of which were required by Transnation before it would insure the title to the purchasers. The owner's affidavits clearly stated: "The undersigned have no knowledge of any restrictions other than shown

-2-

of record, or easements or claims of easements against said property nor does the undersigned have any notice of claims or disputes as to boundary lines on said property." Even though the second mortgages from Standard Federal Bank were never fully satisfied, the affidavits of no-encumbrance declared that the Livingstons' mortgages had been discharged. Relying on these statements, Transnation then issued title insurance policies to the purchasers.

In June 2001, Transnation filed suit in Wayne County Circuit Court against the Livingstons, alleging breach of contract, innocent misrepresentation, fraud, and unjust enrichment. In May 2002, Transnation filed a motion for summary disposition under Mich. Ct. R. 2116(C)(10), which the trial court granted. The extent of the trial court's decision was that it "granted Summary Disposition on Plaintiff's Complaint in its entirety." It also dismissed the Livingstons' counterclaims and set forth the amount of the judgment. The Livingstons timely appealed, and the Michigan Court of Appeals affirmed. *Transnation Title Ins. Co. v. Livingston*, No. 243509, 2004 WL 203075 (Mich. Ct. App. Feb. 3, 2004). The Michigan Court of Appeals noted inconsistencies in the trial court's order, specifically its grant of judgment on both fraud and innocent misrepresentation, but held the error harmless in light of the evidence supporting the fraud count. *Id*. at *2-4. The Livingstons did not seek leave to appeal to the Michigan Supreme Court.

On October 13, 2005, the Livingstons filed a Chapter 7 bankruptcy petition. Soon thereafter, Transnation filed an adversary proceeding seeking a determination that the judgment in its favor was non-dischargeable under 11 U.S.C. § 523(a)(2)(A). At the close of discovery, Transnation filed for summary judgment, arguing that the state court judgment was preclusive on the issue of fraud. The bankruptcy court agreed and held that because the elements of a state common law fraud claim are

virtually identical to those necessary to determine non-dischargeability, the Livingstons were collaterally estopped from re-litigating the issue of fraud. The Livingstons then timely appealed to the district court, which affirmed the bankruptcy court opinion in full.

**II.**

In a bankruptcy appeal, we review directly the decision of the bankruptcy court. *Barlow v. M.J. Waterman & Assocs., Inc. (In re M.J. Waterman & Assocs., Inc.)*, 227 F.3d 604, 607 (6th Cir. 2000). We review the bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 433 (6th Cir. 2004).

The Livingstons argue that the bankruptcy court erred on two fronts. First, they contend that their debt should have been found dischargeable because Transnation's allegation of fraud arose out of the Livingstons' statements regarding their financial condition. 11 U.S.C. § 523(a)(2)(A). Second, they assert that the bankruptcy court should not have given collateral estoppel effect to the state court judgment against them. We disagree.

**A. Statements Regarding Financial Condition**

Under the bankruptcy laws, an individual is not discharged from any debt in a Chapter 7 proceeding "for money, property, . . . or an extension, renewal, or refinancing of credit to the extent obtained by–(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." 11 U.S.C. § 523(a)(2)(A). The "financial condition" exception exempts certain debts from the non-dischargeability provisions of 11 U.S.C. § 523(a)(2)(A).

The Livingstons contend that they are entitled to the protection of the "financial condition"

exception because the "closing documents signed by [the Livingstons constituted] statements respecting their financial condition." In support of this position, they cite the Michigan Court of Appeals' reference to "defendants' unpersuasive argument that they were uninformed or mistaken regarding their own financial obligations."

Although we have not defined exhaustively the boundaries of this exception, it is clear that the Livingstons' statements did not concern their financial condition.[1] In the closing documents, the Livingstons represented that they were unaware of any other encumbrances on the record title. These declarations did not list the Livingstons' financial obligations or document their ability to pay their creditors. They were not statements respecting their "financial condition."

Moreover, the Livingstons' reliance upon the Michigan Court of Appeals' comment regarding their "financial obligations" is misplaced. That court did not purport to apply the non-dischargeability provisions of federal bankruptcy law. The court's reference to "financial obligations" applies to the second mortgages held by Standard Federal Bank that were not disclosed to Transnation. In other words, the court was not persuaded that the Livingstons were unaware of the encumbrances they placed upon the properties they sold.

**B.      Collateral Estoppel**

Principles of collateral estoppel apply in non-dischargeability actions. *See Bay Area Factors*

---

[1]*See, e.g.*, *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-83 (6th Cir. 1998) (addressing whether a debtor misrepresented her ability to pay an obligation while intending to defraud the creditor); *Bank One, Lexington, N.A. v. Woolum (In re Woolum)*, 979 F.2d 71, 73 (6th Cir. 1992) (debtor failed to list all of his debts or liabilities in financial statements); *BancBoston Mortgage Corp. v. Ledford (In re Ledford)*, 970 F.2d 1556, 1558 (6th Cir. 1992) (debtor obtained a loan modification without disclosing encumbrances on the collateral).

*v. Calvert (In re Calvert)*, 105 F.3d 315, 318-19 (6th Cir. 1997); *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981) ("That Congress intended the bankruptcy court to determine the final result–dischargeability or not–does not require the bankruptcy court to redetermine all the underlying facts."). "In determining whether to accord preclusive effect to a state-court judgment, we begin with the fundamental principle that 'judicial proceedings [of any court of any state] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Rally Hill Productions, Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir. 1995) (alterations in original) (quoting 28 U.S.C. § 1738). Thus, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Id*. (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)); *see also Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 388 (B.A.P. 6th Cir. 1998). Accordingly, we look to Michigan law to determine whether Michigan courts would give the state court judgments in this case preclusive effect.

The Michigan Supreme Court has held that "[c]ollateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily determined." *People v. Gates*, 452 N.W.2d 627, 630 (Mich. 1990). Michigan courts have instructed that an issue "must be identical to that determined in the prior action" to have been actually litigated. *Amalgamated Transit Union, Local 1564, AFL-CIO v. S.E. Mich. Transp. Auth.,* 473 N.W.2d 249, 254–55 (Mich. 1991). We look beyond the pleadings to consider both the "factual focus" of the

prior proceedings and "whether the party against whom collateral estoppel is asserted has had a full and fair opportunity to litigate the issue." *Gates*, 452 N.W.2d at 631 (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971)). For an issue to have been "necessarily determined," it must have been "essential to the judgment." *Id*. (citing Restatement (Second) of Judgments § 27 (1982)). "Collateral estoppel applies only where the basis of the prior judgment can be ascertained clearly, definitely, and unequivocally." *Id*. The inability of a court to determine the basis for the prior judgment "is, by itself, enough to preclude the defense of collateral estoppel." *Id*. Thus, the key questions are whether the issue of fraud was decided by the state courts consistently with federal bankruptcy law and whether the issue was necessary to their judgment.

Because fraud in this case is defined by federal bankruptcy law and by state common law in state court, the "actually litigated" prong of the collateral estoppel analysis requires us first to determine whether the state law counts adjudicated by the state trial court and the Michigan Court of Appeals require identical elements to an action under 11 U.S.C. § 523(a)(2)(A). *See Jelm v. Malzeke (In re Malzeke)*, 56 F.3d 64, 1995 WL 316787, at *1 (6th Cir. 1995) (Table) (holding that the "fraud issue at stake in the bankruptcy proceeding was identical to that decided in the [Ohio] state court proceeding" for purposes of 11 U.S.C. § 523(a)(2)(A)). Under 11 U.S.C. § 523(a)(2)(A), a creditor must meet the following requirements to demonstrate an exception to discharge based on fraud:

> In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false misrepresentation; and (4) its reliance was the

proximate cause of the loss.

*In re Rembert*, 141 F.3d at 280-81 (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993)). The third element articulates a subjective reliance standard. *Id*. at 281 n.2 (citing *Field v. Mans*, 516 U.S. 59 (1995)). To prove intent, the creditor must show "actual or positive fraud, not merely fraud implied by law," meaning that the debtor must have acted "maliciously and in bad faith." *Id*. at 281 (citations and quotation marks omitted); *see also Sanderson Farms, Inc. v. Gasbarro*, 299 F. App'x 499, 505-06 (6th Cir. 2008) (holding that collateral estoppel did not apply where the state court's rulings regarding fraud were "internally inconsistent"). To prevail, "a creditor must prove each of these elements by a preponderance of the evidence." *In re Rembert*, 141 F.3d at 281.

> Under Michigan law, actionable fraud requires:
>
> (1) That defendant made a material representation; (2) that it was false; (3) that when [the defendant] made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that [the defendant] made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that [plaintiff] thereby suffered injury.

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). "Fraud will not be presumed but must be proven by clear, satisfactory and convincing evidence." *Id*. We note that bankruptcy courts in Michigan have held uniformly that the elements of a fraud claim under Michigan law are identical to those necessary to determine non-dischargeability under 11 U.S.C. § 523(a)(2)(A). *Building Commc'ns, Inc. v. Rahaim (In re Rahaim)*, 324 B.R. 29, 36 (Bankr. E.D. Mich. 2005); *Robinson v. Callender (In re Callender)*, 212 B.R. 276, 281 (Bankr. W.D. Mich. 1997); *Cresap v. Waldorf (In re Waldorf)*, 206 B.R. 858, 863 (Bankr. E.D. Mich. 1997).

We need not determine, however, as a matter of law, whether the elements of fraud under Michigan law are identical to the higher federal "gross recklessness" standard for non-dischargeability under 11 U.S.C. § 523(a)(2)(A) because, in affirming the state trial court on the fraud count, the Michigan Court of Appeals repeatedly invoked the Livingstons' knowledge of their misrepresentations. The state courts relied on four undisputed facts in the record that conclusively establish fraud under the bankruptcy-law standard. First, it noted that "the retention and expenditure of monies by defendants that should have been used to discharge the second mortgage, coupled with defendants' unpersuasive arguments that they were uninformed or mistaken regarding their financial obligations, are sufficient to establish fraud." Second, the court emphasized Joan Livingston's "purposeful ignorance" of the terms of the documents she was signing as evidence of fraud. Third, again emphasizing that "she elected to remain ignorant," the court found that Joan Livingston's "failure to affirmatively take steps to make certain she was properly informed regarding the documents she was signing do not excuse her from liability . . . particularly when she received a monetary benefit." Finally, the court dismissed Joan Livingston's assertion that the power-of-attorney she granted to her husband negated an inference of fraud on her part. It found that the power-of-attorney was "a broad grant of authority and power and was unambiguous in granting authority to do all acts necessary to convey her interest in the subject property. Joan Livingston retained the monetary benefit from her attorney-in-fact's exercise of authority and never disclaimed his actions." That the Livingstons signed owner's affidavits and affidavits of no-encumbrance only bolsters these conclusions.

Thus, on the strength of the state court rulings and factual findings, we conclude that the

Livingstons' conduct evinced the "bad faith" and "actual or positive fraud" required by 11 U.S.C.

§ 523(a)(2)(A) for a finding of "gross recklessness." *See In re Rembert*, 141 F.3d at 281-82. Thus,

the parties actually litigated the issue of fraud before the state courts, and the Michigan Court of

Appeals adjudicated it consistently with the standard of "gross recklessness" required for a finding

of non-dischargeability on grounds of fraud under 11 U.S.C. § 523(a)(2)(A).

We now turn to whether the issue of fraud was necessary to the state courts' judgments. The

Livingstons argue that the finding of fraud was not "clearly, definitely, and unequivocally" necessary

to the state court judgment because the trial court made no findings of fact and the Michigan Court

of Appeals affirmed the trial court on alternative and independent grounds. *See Gates*, 452 N.W.2d

at 631.

> The Michigan Supreme Court has held:
>
> A judgment affirmed on appeal has conclusive effect, but if the appellate court affirms on grounds that differ from those relied upon by the lower court, the conclusiveness of the judgment as *res judicata* and as collateral estoppel are governed by the appellate decision. Thus if the trial court rests its judgment on two grounds, each of which is independently adequate to support it, the judgment is conclusive as to both; but *i[f] the appellate court affirms on one ground without passing on the other, the second ground is no longer conclusively established under the collateral estoppel doctrine.*

*Amalgamated Transit Union*, 473 N.W.2d at 255 (emphasis added, alteration in original) (citing 1B

James Wm. Moore *et al.*, Moore's Federal Practice ¶ 0.416(2)); *see also Barber v. Regents of the*

*Univ. of Mich.*, No. 250596, 2005 WL 1335132, at *10 (Mich. Ct. App. June 7, 2005) (applying

*Amalgamated Transit Union*). The bankruptcy court properly relied upon the decision of the

Michigan Court of Appeals in applying collateral estoppel.[2]  The Michigan Court of Appeals clearly and unequivocally affirmed the judgments of fraud and breach of contract "without passing" on the other grounds and held the inconsistencies in the trial court's decision to be harmless error.  *See Amalgamated Transit Union*, 473 N.W.2d at 255.  Thus, under *Amalgamated Transit Union* and *Gates*, the bankruptcy court properly gave preclusive effect on an issue decided by the state courts that was necessary to their judgment.

## III.

For the foregoing reasons, we **AFFIRM**.

---

[2]The bankruptcy court improperly relied upon *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244 (3d Cir. 2006), in conducting its analysis.  That case dealt with the collateral estoppel effect of an administrative finding by a federal agency.  *Id*. at 256-57.  Because federal courts must apply state law in determining the collateral estoppel effect of state court judgments, the bankruptcy court should have looked to *Amalgamated Transit Union* for guidance.  *In re Bursack*, 65 F.3d at 53.  However, we reach the same conclusions as the bankruptcy court.